**M. Ryan Casey, OSB # 152824**
ryan@rcaseylaw.com
THE CASEY LAW FIRM, LLC
P.O. Box 2301-417
Silverthorne, CO 80498-2301
Tel: (970) 372-6509

*Local / Lead Counsel for Plaintiff and the Proposed Class*

*(Additional counsel listed on signature page)*

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| SEAN LEYDEN, individually and on behalf of all others similarly situated,<br><br>                              Plaintiff,<br><br>  v.<br><br>J. CREW GROUP, LLC, a Delaware limited liability company,<br><br>                              Defendant. | Case No.:<br><br>**CLASS ACTION ALLEGATION COMPLAINT**<br><br>Unlawful Trade Practices (28 U.S.C. § 1332)<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Sean Leyden ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendant J. Crew Group, LLC ("Defendant") and makes the following allegations based upon information and belief, except as to allegations specifically pertaining to Plaintiff, which are based on personal knowledge.

## INTRODUCTION

1.      Plaintiff brings this class action under Oregon law on behalf of all consumers who, within the applicable limitations period, purchased one or more products at any of Defendant's J. Crew Factory retail stores located in Oregon.

2.      Defendant is a retail clothing company that sells clothing and accessories through its website and at hundreds of retail stores throughout the United States, including in Oregon.  Two of Defendant's largest divisions are J. Crew ("JC") and J. Crew Factory ("JCF").  JC and JCF offer similar styles of clothing and accessories, but the products at these stores are different in price and quality.  JC clothing is of a higher price and quality (e.g., material, stitching, construction, etc.) than JCF clothing.  In contrast, according to Defendant, the JCF "line offers the J. Crew brand with similar styles *made at lower costs* and *sold at lower price points*."[1]  JCF products are made exclusively for JCF stores — they are not leftover or overstock items from the main JC product line.  As different stores owned by the same company, JCF and JC do not compete with one another for customers.

3.      At any given time, the products at JCF stores are offered at a substantial discount from the listed or ticketed reference prices, which are always (or almost always) accompanied by the words "comparable value."  However, these purported discounts and the reference prices they are based on are materially deceptive and intentionally misleading.  JCF's "comparable value" prices are purely fictitious benchmarks that are not tied to the actual prevailing market prices of JCF products or products of comparable quality.  The "comparable value" prices are more consistent with main-line JC product prices and the prices of similar products offered by *JC's* direct

---

[1] Form 10-K for J.Crew Group, Inc. for fiscal year ending February 2, 2008, at p. 4, https://investors.jcrew.com/static-files/28b27e95-f6de-4d39-9b11-2cb9bd3370a3 (emphasis added).

competitors, as opposed to *JCF's* competitors. Thus, while JCF's "comparable value" prices may be based upon similar-looking styles sold at JC stores or the stores of JC's competitors, such a comparison is deceptive because JC products are of a higher quality than JCF items.

4.      Defendant perpetrates this illegal scheme to create the illusion of savings to drive increased sales. Defendant's marketing plan is to trick its customers into believing that JCF products are worth, and have a value equal to, the inflated "comparable value" price, and that the lower advertised sale price represents a special bargain. In fact, the extent of the advertising savings is always false because the reference price is false and misleading. Customers do not enjoy the actual discounts Defendant claims to be offering, and the items are not in fact worth the amounts that Defendant represents to them.

5.      As described in greater detail below, Plaintiff bought items from a JCF retail store in Portland, Oregon, and suffered an ascertainable loss due to JCF's illegal and deceptive pricing practices. When Plaintiff purchased the items from the JCF store, he selected items that were advertised with purported discounts off fictitious reference prices. JCF was able to charge higher prices as a result of representing the products were worth far more than they actually were, and Plaintiff received products that was worth far less than the product as represented in terms of the reference price. Had Defendant been truthful, reasonable consumers would not have purchased the products at all or would have paid less for them.

6.      Defendant has harmed scores of other customers in Oregon because its entire business model is predicated on misrepresenting discounts based on false "comparable value" prices. Thus, Plaintiff brings this civil action for himself and on behalf of similarly situated customers who purchased Defendant's products in Oregon stores. Plaintiff seeks actual or statutory damages, injunctive relief, and declaratory relief under the Oregon Unlawful Trade

Class Action Allegation Complaint        3

Practices Act ("UTPA"), O.R.S. § 646.605, et seq. JCF's conduct also constitutes fraud and intentional misrepresentation for similar reasons. Further, JCF has been unjustly enriched by the sale of these products.

## JURISDICTION AND VENUE

7.    This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because there are more than 100 class members; the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs; and one or more members of the proposed class is a citizen of a state different from Defendant.

8.    The Court has personal jurisdiction over Defendant in this proceeding because Defendant (a) regularly markets and sells products to consumers in Oregon; (b) does substantial business in Oregon by advertising and selling products in the state, including at its JC retail store location in Portland; (c) serves a market for its products in Oregon; and (d) derives substantial revenue from customers based in Oregon. Defendant's contacts with Oregon are so continuous and systematic that it is essentially at home in Oregon.

9.    In addition, Plaintiff's claims arise out of Defendant's specific contacts with this forum. Due to Defendant's actions, Plaintiff was harmed in Oregon through his purchase of Defendant's products. Due to Defendant's actions, its products have been marketed and sold to consumers in Oregon and harmed consumers in Oregon.

10.    Venue is proper under 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(d) because Defendant would be subject to personal jurisdiction in this District if this District were a separate state, given that Defendant sold products to consumers in this District, including to Plaintiff. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of Defendant's conduct

giving rise to the claims occurred in this District, including Defendant's sale to Plaintiff. Venue is also proper in this District under 28 U.S.C. § 1391 because Plaintiff resides in this District.

11.    Divisional Venue is proper under LR 3-2(a) because a substantial part of the events or omissions giving rise to the claim occurred in Multnomah County, Oregon, including Defendant's sale to Plaintiff.

## PARTIES

12.    Plaintiff is an individual consumer who, at all times material hereto, was a citizen and resident of Portland, Oregon.

13.    Defendant J. Crew Group, LLC is a Delaware limited liability company with its principal place of business 225 Liberty Street, New York, NY 10281. A limited liability company is "a citizen of the State where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. § 1332(c)(10). Thus, Defendant is a citizen of Delaware and New York for purposes of determining diversity.

## FACTUAL ALLEGATIONS

**A. Federal and Oregon law prohibit advertising of false and misleading price comparisons.**

14.    Research demonstrates that retail discounts and promotional offers play a significant role in customer purchasing decisions. Customers are more likely to purchase a product that is advertised as being "on sale" than they would be if the product were advertised at a "regular" or nondiscounted price. According to one survey, "[n]early two-thirds of consumers surveyed admitted that a promotion or a coupon often closes the deal, if they are wavering or are undecided on making a purchase."[2]    And "two-thirds of consumers have made a purchase they weren't

---

[2] https://www.invespcro.com/blog/how-discounts-affect-online-consumer-buying-behavior/.

originally planning to make solely based on finding a coupon or discount," while "80% [of consumers] said they feel encouraged to make a first-time purchase with a brand that is new to them if they found an offer or discount."[3]

15.    Reference prices—whether cast as former prices, regular prices, or prices offered by a competitor for the same or similar goods—affect the consumer's perception of the value of the item, the consumer's willingness to purchase the item (whether at that moment or at all), and the amount of money the consumer is willing to pay for the item.  When a reference price is bona fide and truthful, it may help consumers in making informed purchasing decisions.  In contrast, advertising a discount by reference to a fictitious and inflated reference price leads customers to conclude, incorrectly, that they are getting a better deal on the item than they truly are.  False reference prices cause consumers to pay more than they otherwise would and induce them to buy products they otherwise would not have bought.  False reference prices also fraudulently increase consumer demand for products, enabling retailers to charge higher prices than they otherwise could have charged.

16.    In addition to harming consumers, the practice of employing false reference prices also negatively affects competition in retail markets.  A retailer's use of false reference prices constitutes an unfair method of competition and harms honest competitors that sell the same or similar products, or otherwise compete in the same market, using valid and accurate reference prices.  Businesses that play by the rules—and the investors in those businesses—are penalized if the unlawful advertising practices of their competitors go unchecked.

---

[3]    https://www.prnewswire.com/news-releases/retailmenot-survey-deals-and-promotional-offers-drive-incremental-purchases-online-especially-among-millennial-buyers-300635775.html

17.    Federal and state courts have highlighted the harms that flow from false reference pricing practices.  As the United States Court of Appeals for the Ninth Circuit explained: "Most consumers have, at some point, purchased merchandise that was marketed as being 'on sale' because the proffered discount seemed too good to pass up.  Retailers, well aware of consumers' susceptibility to a bargain, therefore have an incentive to lie to their customers by falsely claiming that their products have previously sold at a far higher 'original' price in order to induce customers to purchase merchandise at a purportedly marked-down 'sale' price." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1101 (9th Cir. 2013).

18.    Federal Trade Commission ("FTC") regulations provide guidance on price comparisons.  As relevant here:

> [One] form of bargain advertising is to offer a reduction from the prices being charged either by the advertiser or by others in the advertiser's trade area **for merchandise of like grade and quality – in other words, comparable or competing merchandise – to that being advertised.**  Such advertising can serve a useful and legitimate purpose when it is made clear to the consumer that a comparison is being made with other merchandise and **the other merchandise is, in fact, of essentially similar quality and obtainable in the area.**  The advertiser should, however, be reasonably certain, just as in the case of comparisons involving the same merchandise, that the price advertised as being the price of comparable merchandise does not exceed the price at which such merchandise is being offered by representative retail outlets in the area.  **For example, retailer Doe advertises Brand X pen as having "Comparable Value $15.00". Unless a reasonable number of the principal outlets in the area are offering Brand Y, an essentially similar pen, for that price, this advertisement would be deceptive.**

16 CFR § 233.2(c) (emphasis added).

19.    In Oregon, the UTPA prohibits businesses from making "false or misleading representations of fact concerning the reasons for, existence of, or amounts of price reductions," O.R.S. § 646.608(1)(j); "false or misleading representations of fact concerning the offering price

of, or the person's cost for real estate, goods or services," O.R.S. § 646.608(1)(s); representing that goods have "characteristics" that they do not have, O.R.S. § 646.608(1)(e); advertising "goods … with intent not to provide the real estate, goods or services as advertised," O.R.S. § 646.608(1)(i); making "false or misleading statements about a … promotion," O.R.S. § 646.608(1)(p); and "any other unfair or deceptive conduct in trade or commerce," O.R.S. § 646.608(1)(u), which may be specified in regulations promulgated by the Oregon Attorney General.

20.    The Oregon Attorney General has promulgated administrative rules pertaining to misleading price representations.  Under those rules, it is unfair or deceptive for a retailer to "represent[] that goods are available for sale or lease by it at an offering price less than a reference price unless such reference price comes within any one of the [listed] exceptions."  Or. Admin. R. 137-020-0010(6).  As relevant here, a seller may use a reference price that "an identified or identifiable competitor is or has in the recent regular course of its business offered to make good faith sales of *the same or similar goods*."  Or. Admin. R. 137-020-0010(6)(c) (emphasis added). But to qualify as "similar," the "goods associated with a reference price" must be "*similar in each significant aspect*, including size, grade, quality, quantity, ingredients, utility and operating characteristics, to the offered goods."  Or. Admin. R. 137-020-0010(5)(g).

21.    The UTPA also provides that a person engages in an unlawful practice when violating Oregon's Price Comparison Advertising Law. O.R.S. § 646.608(1)(ee) (citing O.R.S. §§ 646.884 and 646.885).  A seller may not advertise price comparisons unless "[t]he seller clearly and conspicuously identifies in the advertisement **the origin of the price** that the seller is comparing to the seller's current price."  O.R.S. § 646.883(1) (emphasis added).  "The origin of the price that the seller is comparing to the seller's current price includes but is not limited to the seller's former selling price, a manufacturer's list price or a competitor's price for the same real

Class Action Allegation Complaint          8

estate, goods or services." *Id.* The "compliance is established based on facts provable by the seller." *Id.* § 646.883(2).

**B. Defendant employs a pervasive and systemic fake discount scheme in violation of federal and Oregon law.**

22.    For years, Defendant has engaged in a pervasive marketing scheme to artificially inflate the prices of its products for the sole purpose of marking them at a discounted "sale" price relative to a "comparable value" price.

23.    The common denominator in JCF's marketing strategy is to trick customers into thinking that, whenever they happen to visit a JCF store, they are being offered lower than usual prices based on products of "comparable value." Regardless of the marketing spin, these discounts are all based on the false premise that JCF products should be "valued" at a higher price. In truth, the "comparable value" prices are unmoored to any actual price at which competitors are offering "similar goods" in the area, and these prices are used to deceive customers into believing they are getting a great deal. In short, Defendant's sales tactics are not offered in good faith and are made for the sole purpose of deceiving and inducing consumers into purchasing products they otherwise would not have purchased.

24.    Defendant always (or almost always) sells its JCF products at prices significantly lower than the "comparable value" prices. This scheme follows a simple pattern: (1) each JCF product features an inflated "comparable value" reference price; (2) the consumer has no way of determining the origin or basis for the "comparable value" price, how it was chosen or calculated, or the identity of any competitor selling the product at the reference price; (3) the products are consistently offered at some substantial discount to the "comparable value" price, whether by way of a limited-time storewide promotion, a promotion that applies to particular categories of products (e.g., sweaters or outerwear), or simply a lower price for a particular item that appears to reflect a

discount off the reference price; and (4) while the terms of the applicable promotions change frequently, the "comparable value" price is rarely, if ever, the applicable price for any JCF products.

25.     By offering a never-ending parade of limited-time promotional offers, Defendant leads reasonable consumers to believe they are getting a better deal on JCF products than they truly are.  In other words, JCF leads reasonable consumers to believe that if they buy now, they will get a product worth $X$ (the "comparable value" price) at a discounted, lower price $Y$ (the actual sale price).  This creates a sense of urgency: buy now, and you will receive something worth more than you pay for it; wait, and you will pay more for the same (or similar) thing later.[4]

26.     Based on JCF's advertisements, consumers reasonably believe the reference prices represent actual sales prices for essentially similar goods with a "comparable value."  In truth, the "comparable value" prices are entirely fabricated by Defendant to give off the appearance of a bargain.  Defendant is aware that consumers typically lack material information about a product and often rely on information from sellers when making purchasing decisions, especially when a product's quality or value is difficult to discern.[5]  Defendant does not provide in-store customers

---

[4] Even if JCF did previously offer its merchandise at the reference price for some short period of time (something JCF rarely, if ever does), that limited offering would not legitimize JCF's practices.  *See, e.g.*, 16 C.F.R. § 233.1(a) (requiring that a comparison reference price be the "price at which the article was offered to the public on a regular basis for a reasonably substantial period of time"); see also 16 C.F.R. § 233.3(a) ("To the extent that list or suggested retail prices do not in fact correspond to prices at which a substantial number of sales of the article in question are made, the advertisement of a reduction may mislead the consumer.") (emphasis added); 16 C.F.R. § 233.3(d) ("[I]f the list price is significantly in excess of the highest price at which substantial sales in the trade area are made, there is a clear and serious danger of the consumer being misled by an advertised reduction from this price.").

[5] Phillip Nelson, *Information and Consumer Behavior*, Journal of Political Economy 78, no. 2, p. 311-312 (1970) ("Not only do consumers lack full information about the price of goods, but their information is probably even poorer about the quality variation of products simply because the latter information is more difficult to obtain.").

with any information about the bases for its "comparable value" prices; rather, the tags simply

state a "COMPARATIVE VALUE" amount. According to a disclosure on the JCF website, JCF's

"Comparable Value (or Comp. Value) prices are based on prices at which similar merchandise has

been offered for sale either by J.Crew or other retailers or websites." On information and belief,

Defendant fails to provide in-store consumers with this disclosure or any similar information about

its approach to deriving the "comparable value" prices.

27.     Defendant's practices violated and continue to violate federal and Oregon law in

multiple respects.

28.     First, Defendant fails to identify the basis or origin of the "comparable value" prices

in its advertising, in violation of O.R.S. § 646.883, O.R.S. § 646.885(1) and/or 16 CFR § 233.2(c).

While Defendant runs near-constant "sale" prices across its product lines, Defendant never

identifies "the origin of the price" being compared to the current sale price. O.R.S. § 646.885(1).

Defendant's advertising and price tags also do not "ma[k]e clear to the consumer that a comparison

is being made with other merchandise and the other merchandise is, in fact, of essentially similar

quality and obtainable in the area." 16 C.F.R. § 233.2(c). An opaque and unsupported reference

to a purported "comparable value" on the tag of each item does not meet either requirement.

Defendant does not reference the specific basis for comparison for any item. Nor does it make

general or specific representations of any kind regarding whether the basis for comparison are

items of similar quality that are obtainable in the area. The FTC guidelines clearly outline that

reference prices meant to reflect comparable values must be ***actual*** prices being charged by other,

similar retailers in the geographical region at that point in time, not estimates of what a fictitious

retailer may charge. 16 C.F.R. § 233.2(c).

29.     **Second,** Defendant's unfair and deceptive use of reference prices constitutes "unfair or deceptive conduct in trade or commerce," O.R.S. § 646.608(1)(u), in that it violates Or. Admin. R. 137-020-0010(6) and does not fall under any exception thereto.  A seller may advertise a discount off a price charged by another business when "an identified or identifiable competitor is or has in the recent regular course of its business offered to make good faith sales of the same or similar goods" at that price.  Or. Admin. R. 137-020-0010(6)(c).  A "competitor" is a defined as "a retail outlet in the [seller's] geographic market area with whom the [seller] in fact competes for sales."  Or. Admin. R. 137-020-0010(5)(c).  And "similar goods" is defined as "goods associated with a reference price which are similar in each significant aspect, including size, grade, quality, quantity, ingredients, utility and operating characteristics, to the offered goods."  Or. Admin. R. 137-020-0010(5)(g).  While the basis for Defendant's "comparable value" calculations is unclear, the prices do not correlate to other goods that are "***similar in each significant aspect***, including size, grade, quality, quantity, ingredients, utility and operating characteristics, to the offered goods," in violation of Or. Admin. R. 137-020-0010(5)(g).  Instead, JCF's "comparable value" prices are more consistent with main-line JC product prices and the prices of similar products offered by *JC's* direct competitors, as opposed to regular, nondiscounted prices of comparable JCF products or the prices of similar products sold by *JCF's* competitors.

30.     While JCF's "comparable value" prices may be based upon prices for *similar-looking* styles sold at JC stores or the stores of JC's direct competitors, such a comparison is deceptive for at least three independent reasons: (a) JC and JCF are not competitors; (b) Defendant's JC products and products sold by JC's competitors are of a higher quality than JCF items, which are made to a lower standard to be sold at a lower cost; and (c) the "comparable

value" prices exceed the actual prices at which essentially similar merchandise has been offered by representative retail outlets in the geographic area.

31.     JC and JCF are not competitors because they do not "in fact compete[] for sales" in Oregon.  Or. Admin. R. 137-020-0010(5)(c).  Rather, they cater to different customer segments within the same geographic area.  The three JCF locations in Oregon are located in Eugene, Happy Valley, and Portland at Cascade Station, which is a value-oriented or "outlet" shopping mall that includes stores like Banana Republic Factory, Designer Shoe Warehouse (DSW), Old Navy, Ross Dress for Less, Nordstrom Rack, Marshalls, and HomeGoods.  In contrast, the single mainline JC location in Oregon is in Washington Square shopping center, which is home to some of the most high-end shopping in the state, including stores like Nordstrom, Pottery Barn, and Williams-Sonoma.

32.     Defendant has acknowledged the lack of competition between JC and JCF at the corporate level.  J. Crew's former CEO publicly stated during a 2015 conference call that there is "minimal" overlap between JC and JCF customers.  More generally, companies that employ Defendant's model of producing different products at different price points for their "mainline" and "factory outlet" locations do so to expand market reach to different customer segments, not to erode or cannibalize higher-price sales at the mainline stores.  Factory stores serve a different segment and help introduce the brand to consumers who may not shop at mainline stores.  In addition, customers who shop at mainline stores are seeking different quality and design attributes than outlet or factory store customers, who tend to be more budget conscious.  Mainline and factory stores are complementary rather than competitive sales channels, and there is limited crossover between the respective customer bases.  Thus, to the extent JCF's "comparable value" prices are

derived from mainline JC products, that comparison is improper under the UTPA because JC and JCF are not "competitors" of one another.

33.    Separately, price comparisons between JCF and JC products are inherently misleading because the products offered by the two stores are not similar in each significant aspect. Rather, JC products are made with superior materials and are made to a higher quality specification than JCF products. Thus, the goods being compared are not "similar goods" under Or. Admin. R. 137-020-0010(5)(g).

34.    For example, Plaintiff purchased from JCF a short-sleeve linen-blend shirt with a ticketed "comparable value" price of $98.00. Plaintiff paid $39.20 for the shirt, representing an apparent 60 percent discount. The shirt is made with 79 percent linen and 21 percent cotton, and JCF does not provide any information regarding the quality of the materials, other than to state that the shirt is imported from India. While the basis for the $98.00 comparable price is known only to Defendant at this time, JC does currently sell similar-looking short-sleeve Baird McNutt Irish linen shirt for $98.00. According to the product page for the Baird McNutt Irish linen shirt, which is 100 percent linen, JC "sourced [its] linen from Ireland's Baird McNutt mill." It further states: "Irish linen is considered to be the world's finest, and Baird McNutt's, the finest in Ireland." There are multiple apparent quality discrepancies between these two products that make them unfit for price comparison: (a) the superior JC shirt is made of 100 percent linen, while the JCF shirt contains cheaper source materials overall due to the use of a linen-cotton blend; (b) the superior JC shirt uses premium-quality linen from a recognized and well-established mill in Ireland, while the JCF product listing does not provide any similar information; and (c) the JCF product is constructed to a lower quality standard than the JC product, which uses a "special weaving process that creates softer, longer-lasting linen." Thus, to the extent JCF's "comparable value" price for

Class Action Allegation Complaint         14

JCF's linen-blend shirt is JC's Baird McNutt Irish linen shirt (or a product of like quality), the goods being compared are not "similar goods" under Or. Admin. R. 137-020-0010(5)(g).

35.    In another example, Plaintiff purchased from JCF a "performance jersey hoodie" with a ticketed "comparable value" of $89.50. Plaintiff paid $62.65, representing an apparent 30 percent discount. The hoodie is made with 90% polyester and 10% elastane, and JCF does not provide any information regarding the quality of the materials, other than to state that the hoodie is imported from Indonesia. While the basis for the $89.50 comparable price is known only to Defendant at this time, JC does currently sell a soft-knit fleece hoodie for $89.99. According to the product page for the soft-knit fleece hoodie, it is comprised of 83% cotton and 17% polyester, "is knit in a supersoft 10.6-ounce cotton blend [and] has a hidden zip pocket where you can safely stash your keys or phone[.]" There are multiple apparent quality discrepancies between these two products that make them unfit for price comparison: (a) the superior JC hoodie is made of 83% cotton, while the JCF hoodie contains no cotton and is predominantly comprised of polyester; (b) the JC hoodie is heavier and comprised of more fabric; and (c) the JC product contains both a pouch and hidden compartment for one's phone, whereas the JCF product does not. Thus, to the extent JCF's "comparable value" price for JCF's performance jersey hoodie is JC's soft-knit fleece hoodie (or a product of like quality), the goods being compared are not "similar goods" under Or. Admin. R. 137-020-0010(5)(g).

36.    Relatedly, JCF's "comparable value" prices exceed the prices at which similar merchandise is being offered by representative retail outlets in the area. As the FTC guidelines point out, a "comparable value" price comparison is deceptive if the reference price does not reflect a bona fide offering price used by "a reasonable number of the principal outlets in the area" selling "an essentially similar" item. 16 C.F.R. § 233.2(c).

37.     JCF's closest competitors in the state include Gap Factory (including a location in Troutdale), Banana Republic Factory (including a location in Cascade Station with JCF), and/or Old Navy (Cascade Station). The following price comparisons are illustrative:

    a.   Plaintiff spent $39.20 on a short-sleeve linen-blend shirt discounted from a purported $98 reference price. But, based on counsel's investigation prior to the complaint's filing, the sale prices for all linen-blend shirts in the same geographic area are: $20 - $40 (Gap Factory), $30 - $50 (Banana Republic Factory), and $19.50 - $32 (Old Navy). Even the similarly dubious 'reference prices' for the competitor products were *less* than JCF's $98 reference price, including: $50 - $60 (Gap Factory), $70 - $75 (Banana Republic Factory), and $33 - $40 (Old Navy).

    b.   Plaintiff spent $62.65 on a performance jersey hoodie discounted from a purported $89.50 reference price. But, based on counsel's investigation prior to the complaint's filing, the sale prices for all hoodies in the same geographic area were: $20 - $42 (Gap Factory) and $35 - $60 (Old Navy). No comparable product was sold by Banana Republic Factory, though it had a superior 55% cotton product (versus 90% polyester from JCF) sold online for $80.

    c.   Plaintiff spent $29.75 on a leather dress belt discounted from a purported $59.50 reference price. But, based on counsel's investigation prior to the complaint's filing, the sale prices for all belts in the same geographic area were: $15 - $18 (Gap Factory), $39 - $42 (Banana Republic Factory, leather belts), and $10 - $23 (Old Navy).

    d.   Plaintiff spent $34.75 on flex chino shorts discounted from a purported $69.50 reference price. But, based on counsel's investigation prior to the complaint's filing,

the sale prices for all shorts (chino or otherwise) in the same geographic area were: $16 - $33 (Gap Factory), $18 - $55 (Banana Republic Factory), and $9 - $30 (Old Navy).

    e.   Plaintiff spent $44.75 on a classic flex long-sleeve plaid casual shirt discounted from a purported $89.50 reference price. But, based on counsel's investigation prior to the complaint's filing, the sale prices for all long-sleeve button-down shirts in the same geographic area were: $16.50 - $35 (Gap Factory), $21 - $60 (Banana Republic Factory), and $13 - $35 (Old Navy).

    f.   Plaintiff spent $34.95 on a casual short-sleeve gauze shirt discounted from a purported $89.50 reference price. But, based on counsel's investigation prior to the complaint's filing, the sale prices for all casual short-sleeve shirts in the same geographic area were: $16 - $60 (Banana Republic Factory) and $12.50 - $24 (Old Navy). Gap Factory, meanwhile, sells a similar gauze texture shirt for $22.

38.    Third, JCF makes false or misleading representations of fact concerning the existence of and extent of its price reductions and the amounts of "savings" realized by customers, in violation of O.R.S. §§ 646.608(1)(j) and (1)(s). JCF subjects its customers to a rotating barrage of promotional offers, which often overlap and combine with one another. JCF often offers purported discounts of 30, 40, 50, or 60 percent or more off ticketed prices. Defendant's representations regarding the extent of its price reductions are false and misleading and induce consumers into believing that they are purchasing products at a greater discount than they actually are. But because JCF products are not, on information and belief, ever sold at the ticketed reference prices, it is not possible for reasonable consumers to ascertain the actual, bona fide "regular" prices of the products. Defendant's misrepresentations even extend to its printed receipts, which misstate

Class Action Allegation Complaint       17

the exact "savings" realized by the customer, both for each individual purchase and the transaction as a whole, by reference to fictitious "comparable value" prices. Reasonable consumers rely on these misrepresentations of fact in concluding that they are achieving substantial savings when, in reality, they are often paying Defendant's regular prices. The products received by consumers including Plaintiff are worth far less than the purported reference prices at which they are advertised.

39.     Fourth, Defendant represents that the goods have characteristics that they do not have, in violation of O.R.S. § 646.608(1)(e). As detailed above, Defendant does this by anchoring the products with a monetary "value" attributable to superior goods. Based on investigation of counsel, it is unclear what actual products (if any) were chosen as bases for comparison for the Products purchased by Plaintiff. But discovery will show that "Similar Goods," as that term is defined under Oregon law, are priced well below the stated reference prices for these products.

40.     Fifth, Defendant advertises goods with the intent not to sell them as advertised, in violation of O.R.S. § 646.608(1)(i) and (1)(u) and the Attorney General regulations on price comparisons. As detailed above, Defendant advertises goods at referenced prices without the intent to sell goods with the referenced prices.

## C.  Plaintiff was misled by Defendant's misrepresentations and suffered an ascertainable loss.

41.     On June 7, 2025, Plaintiff visited the JCF retail store location at Cascade Station in Portland, Oregon. During that visit, Plaintiff made multiple clothing purchases from Defendant (collectively, the "Products").

42.     At the store, JCF advertised "comparable value" prices on the price tag for its products, representing that the products were worth far more than their actual value. Plaintiff believed he was able to pay significantly less than the value of the Products based on the discounts

being offered and what they normally sell for in the retail marketplace. He was thereby induced to purchase multiple items, all of which were offered at prices significantly lower than their stated "comparable value" prices. Plaintiff relied on Defendant's false, misleading, and deceptive representations and warranties about the Products in deciding to purchase the Products. Accordingly, these representations and warranties were part of the basis of the bargain, in that Plaintiff would not have purchased the Products, or would not have paid as much for the Products, had he known Defendant's representations were not true.

43.    Regardless of whether Plaintiff saw and relied on the price representations, he still purchased goods at inflated prices that Defendant was able to charge as a result of the falsely listed reference prices.

44.    Plaintiff also purchased products that were sold as part of an illegal transaction (goods accompanied by false reference prices).

45.    On Plaintiff's receipt, Defendant made additional product pricing and value representations regarding the Products. For example, Defendant printed on the receipt that the price for the "dress belt – new" was $59.50, and stated that a discount of 50 percent applied to the purchase to make the final price $29.75. The receipt listed the "comparable value" price, the applicable discount, and the effective sale price for each of the Products. At the bottom of the receipt, Defendant printed "You have saved $318.45." These representations on the receipt further indicated that the Products had a value of, and was normally and usually sold for, the reference price, and that the lower prices he paid were true bargain prices after Defendant applied a "50% off" discount on the Products.

46.    However, Defendant's reference prices and advertised discounts were false and deceptive. Based on the investigation of Plaintiff's counsel, all the Products were JCF-exclusive

items; they were never offered or sold at JC or anywhere else.  Moreover, Defendant has never

offered any of the Products for the listed "comparable value" prices.  Thus, the existence and extent

of the savings claimed in in-store advertising and on the receipt is false and misleading. Basedon

on counsel's investigation, this is also true with respect to actual sale prices offered by Defendant's

discernable competitors, as outlined above.

      47.     Defendant thus defrauded Plaintiff.  For each of the Products, the price listed as the

"comparable value" was an inflated and fictitious number that led Plaintiff to believe he was

getting a better deal than he truly was and induced Plaintiff's sale.

      48.     As a direct and proximate result of Defendant's violations of UTPA, Plaintiff was

harmed, suffered an injury-in-fact, and suffered an ascertainable loss of money or property. Aside

from not receiving the benefit of the bargain due to Defendant's false reference pricing scheme the

difference between the reference price and purchase price), Plaintiff was injured because he paid

an inflated price (i.e., price premium) for the merchandise as a result of Defendant's misconduct

which increased market demand. Plaintiff also expended funds as part of an illegal transaction.

      49.     As explained above, however, Plaintiff and class members' reasonable expectations

were not met. Instead of receiving products with a market value equal to the alleged regular prices,

they received items worth less. In addition, instead of receiving a significant discount, Plaintiff

and the Class received little or no discount. Thus, Defendant's false advertisements harm

consumers by depriving them of the reasonable expectations to which they are entitled.

      50.     Plaintiff also suffered ascertainable loss in the amount of the entire purchase price

when he purchased Products from Defendant that were advertised in violation of state and federal

law.  As described in greater detail above, Defendant failed to identify the basis or origin of the

"comparable value" prices in its advertising, in violation of O.R.S. § 646.885(1) and 16 CFR §

233.2(c).  Defendant never identifies "the origin of the price" being compared to the current sale price.  O.R.S. § 646.885(1).  Defendant's advertising and price tags also do not "ma[k]e clear to the consumer that a comparison is being made with other merchandise and the other merchandise is, in fact, of essentially similar quality and obtainable in the area."  16 C.F.R. § 233.2(c).  Because Defendant was prohibited by state and federal law from advertising its products without these disclosures, as well as prohibited from making false representations about the products more generally, Plaintiff and the Class are entitled to damages based on the entire purchase price.

51.     The unlawful acts and omissions described here are, and continue to be, part of a pattern or generalized course of conduct.  Defendant's conduct is ongoing and is likely to continue and recur absent a permanent injunction.  Accordingly, Plaintiff seeks an order enjoining Defendant from committing such unlawful practices. O.R.S. § 646.638(1); O.R.S. § 646.638(8)(c); O.R.S. § 646.636.

52.     Plaintiff would shop at one of Defendant's stores again if he could have confidence regarding the truth of Defendant's prices and the value of its products.

53.     Plaintiff will be harmed if, in the future, he is left to guess as to whether Defendant is providing a legitimate sale or not, and whether its products are actually worth the prices offered. If Plaintiff were to purchase again from an Oregon store without Defendant having changed its unlawful and deceptive conduct alleged herein, Plaintiff would be harmed on an ongoing basis and/or would be harmed once or more in the future.

54.     The balance of the equities favors the entry of permanent injunctive relief against Defendant.

55.     Plaintiff, Class members, and the general public will be irreparably harmed absent the entry of permanent injunctive relief against Defendant.

56.     A permanent injunction against Defendant is in the public's interest.  Defendant's unlawful behavior is ongoing as of the date of the filing of this Complaint.  If not enjoined by order of this Court, Defendant will or may continue to injure Plaintiff and Oregon consumers through the misconduct alleged.  Absent the entry of a permanent injunction, Defendant's unlawful behavior will not cease and, in the unlikely event that it voluntarily ceases, it is capable of repetition and is likely to reoccur.

## CLASS ACTION ALLEGATIONS

### A.  Class Definition

57.     Plaintiff brings the asserted claims on behalf of the following proposed Class:

> All persons who, within the applicable statute of limitations period, purchased an item from a JCF retail store located in the State of Oregon at a discount to a ticketed "comparable value" price.

58.     The applicable limitations period referred to by the class definition is expansive and extends back years or decades based on the "delayed discovery" rule explicitly provided for in the Oregon Unlawful Trade Practices Act.  *See* ORS 646.638(6).  Defendant's unlawful false discounting practices have been pervasive at its Oregon stores—and have been at the core of its marketing plan—for many years (the exact length of time will be subject to discovery and proof).  By design, the false advertising scheme by its very nature is hidden and impossible for the typical consumer to discover.  Plaintiff and the Class did not know, and could not have known, that these ticketed reference prices and discount representations were false.  Thus, the applicable limitations period—and the corresponding class period—extends back to the very first date that Defendant began engaging in the unlawful conduct alleged herein.

59.     Plaintiff reserves the right to expand, limit, modify, or amend the class definition, including the addition of one or more subclasses, in connection with their motion for class

certification, or at any other time, based on, *inter alia*, changing circumstances and new facts obtained.

60.     The following people are excluded from the proposed Class: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

**B.  Numerosity & Ascertainability**

61.     Members of the proposed Class are so numerous that their individual joinder herein is impracticable.  The precise number of members of the class and their identities are unknown to Plaintiff at this time but may be determined through discovery.  The Class may be notified of the pendency of this action by mail, email, and/or publication through the distribution records of Defendant.

**C.  Predominance of Common Questions**

62.     Common questions of law and fact exist as to all members of the proposed Class, and those questions predominate over questions affecting only individual members.  Common legal and factual questions include, but are not limited to: (a) Defendant's policies and actions regarding advertising and pricing practices in Oregon retail stores and online; (b)  whether a reasonable consumer is likely to be deceived by Defendant's conduct and omissions alleged herein; (c) whether Defendant's misconduct set forth in this Complaint violates the Oregon Unlawful

Trade Practices Act, ORS § 646.605 et seq.; (d) the duration of Defendant's false reference price and false discount advertising scheme; (e) whether Plaintiff and the Class are entitled to injunctive relief and (f) Whether Defendant should be ordered to pay statutory damages of $200 to Plaintiff and to each Class member.

### D.  Typicality

63.    Plaintiff's claim is typical of the claims of the Class in that Plaintiff and members of the Class were harmed as a result of Defendant's uniformly illegal, deceptive, and unfair pricing practices.

### E.  Adequacy

64.    Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class members he seeks to represent; he has retained competent counsel experienced in prosecuting class actions; and he intends to prosecute this action vigorously.  The interests of the members of the Class will be fairly and adequately protected by Plaintiff and his counsel.

### F.  Superiority

65.    The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of the Class.  Each individual member of the Class may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and

comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of those issues. Finally, Defendant has acted or refused to act on grounds generally applicable to the entire Class, thereby making it appropriate for this Court to grant final injunctive relief and declaratory relief with respect to the Class as a whole.

<u>**CLAIMS FOR RELIEF**</u>

**COUNT I**
**Violation of the Oregon Unlawful Trade Practices Act -- O.R.S. §§ 646.605, et seq.**
**(By Plaintiff and the Class)**

66.    Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

67.    Plaintiff brings this cause of action on behalf of himself and members of the Class.

68.    Defendant is a "person," under the UTPA, as defined by O.R.S. § 646.605(4). The definition of "person" includes "corporations," and as alleged above, Defendant is a corporation.

69.    Defendant engages in the conduct of "trade" and "commerce" under the UTPA. Defendant does this by advertising, offering, and distributing, by sale, goods in a manner that directly and indirectly affects people of the state of Oregon. O.R.S. § 646.605(8). Defendant advertises and sells clothing in Oregon and serves a market for its products in Oregon. Due to Defendant's actions, its products have been marketed and sold to consumers in Oregon and harmed consumers in Oregon, including Plaintiff and the Class.

70.    Defendant's unlawful methods, acts, and practices described herein were committed in the course of Defendant's business. O.R.S. § 646.608(1).

71.    The products advertised, offered, and sold by Defendant constitute "goods" that are or may be obtained primarily for personal, family, or household purposes, as defined by O.R.S. §

646.605(6).  Plaintiff and members of the Class purchased the products advertised by Defendant for personal, family, or household purposes.

72.    Defendant's representations of regular prices, sales, and discounts are "advertisements" as defined by O.R.S. § 646.881(1).  These representations about the prices, sales, and discounts were made in connection with the sales of Defendant's clothing and accessories.

73.    Defendant's use of list prices, sitewide sales, and advertised discounts are "price comparisons," as defined by O.R.S. § 646.881(2).  These statements make a claim that the current price is reduced as compared to other products with a "comparable value."

74.    Defendant's advertisements were unlawful in that they fail to clearly and conspicuously identify the origin of the "comparable value" price that Defendant is comparing to JCF's current price, in violation of O.R.S. § 646.883.  Similarly, Defendant's use of the term "sale" (and potentially other terms) in its advertisements fail to identify the origin of the price that Defendant is comparing to JCF's current price, in violation of O.R.S. § 646.885.  These failures constitute unlawful business practices under O.R.S. § 646.608(1)(ee).

75.    Defendant operated a systematic and pervasive unlawful price comparison policy. This scheme deceived, and continue to deceive, reasonable consumers into believing they are receiving substantial discounts off a fictitious "comparable value" price.  As alleged in greater detail above, Defendant makes "false or misleading representations of fact concerning the reasons for, existence of, or amounts of price reductions."  O.R.S. § 646.608(j).  Defendant does this by advertising false reference prices for its products that customers, including Plaintiff and the Class, reasonably assume to be bona fide prices for other goods that are similar in all material respects. In reality, on information and belief, the ticketed prices are inflated and fictitious prices that never apply to the products.

76.     As alleged in greater detail above, Defendant also makes "false or misleading representations of fact concerning the offering price of, or the person's cost for real estate, goods or services." O.R.S. § 646.608(s). As described above, the so-called "comparable value" prices advertised on JCF price tags and online price listings do not represent the prevailing prices for goods of "comparable value." These prices and the words "comparable value" are false or misleading representations of fact concerning the offering price of the products. A proper baseline for establishing the extent of a discount would be the regular prevailing prices for the same products at JCF stores (and not the prices of higher quality items in JC or other stores). In addition, the purported price reductions are not true price reductions.

77.     As alleged in greater detail above, Defendant also "advertises … goods … with intent not to provide the … goods … as advertised," O.R.S. § 646.608(i). Defendant advertises products at a sale price, or discount, as compared to a stated former price. But the purported discounts that Defendant advertises are not the true discounts that the customer receives. In many cases, the customer receives no discount at all.

78.     As alleged in greater detail above, Defendant also represents that its goods have characteristics that they do not have. O.R.S. § 646.608(e). Defendant represents that the value of its products is greater than it actually is by advertising fake discounts for the products.

79.     As alleged in greater detail above, Defendant's unfair and deceptive use of reference prices constitutes "unfair or deceptive conduct in trade or commerce," O.R.S. § 646.608(1)(u), in that it violates Or. Admin. R. 137-020-0010(6) and does not fall under any exception thereto. Defendant's "comparable value" prices for JCF products are not prices at which an identified or identifiable competitor is or has in the recent regular course of its business offered to make good faith sales of the same or similar goods.

Class Action Allegation Complaint          27

80.     Defendant's unlawful methods, acts, and practices described above were "willful violations" of O.R.S. § 646.608 because Defendant knew or should have known that its conduct was a violation, as defined by O.R.S. § 646.605(10).  For example, Defendant knows that its actions are misleading and deceptive because it was already sued for the same behavior under California's consumer protection laws.

81.     Defendant had a duty to disclose that the discounts were not real and that the regular prices were not the true prices of products that were similar in all material respects.  Defendant had a duty because (1) Defendant had exclusive knowledge of material information that was not known to Plaintiff and the Class; (2) Defendant concealed material information from Plaintiff and the Class; and (3) Defendant made partial representations which were false and misleading absent the omitted information.

82.     Defendant's misrepresentations and nondisclosures deceived and have a tendency to deceive a reasonable consumer and the general public.

83.     Defendant's misrepresentations and nondisclosures are material. A reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

84.     Defendant engaged in the reckless or knowing use or employment of the unlawful methods, acts or practices alleged here, which are unlawful under O.R.S. § 646.608.

85.     Defendant knowingly deployed a deceptive and unlawful pricing scheme in reckless disregard of the requirements of ORS 646.608 and with knowledge that the practice violated ORS 646.608.

86.     As a direct, substantial and/or proximate result of Defendant's conduct, Plaintiff and Class members suffered ascertainable losses of money or property.

87.    Plaintiff and Class members would not have purchased the products at the prices they paid if they had known the advertised reference prices and discounts were false.

88.    In the alternative, Plaintiff and Class members paid more than they otherwise would have paid for the products they purchased from Defendant. Defendant's false pricing scheme fraudulently increased demand from consumers.  The products that Plaintiff and Class members purchased were not, in fact, worth as much as Defendant represented them to be worth.

89.    Plaintiff seeks, on behalf of himself and the Class: (1) the greater of statutory damages of $200 or actual damages; (2) punitive damages; and (3) attorneys' fees and costs. O.R.S. § 646.638(3); O.R.S. § 646.638(8).

90.    This action was brought "within one year after the discovery of the unlawful method, act or practice."   O.R.S. § 646.638.   However, the applicable limitations period is expansive and extends back multiple years based on the "delayed discovery" rule pursuant to O.R.S. § 646.638(6).

91.    Plaintiff and the Class did not know, and could not have known, that Defendant was engaged in an unfair trade practice when they purchased from Defendant.

92.    Plaintiff and the Class did not know, and could not have known, that these reference prices and discount representations were false.

93.    Class members have not discovered, and could not have reasonably discovered, Defendant's fake discounting scheme.

94.    By Defendant's design, the false advertising scheme by its very nature was hidden and difficult for Plaintiff and absent class members to discover.

95.    The only way for a person to know that Defendant's advertised discounts were false is for the person to know Defendant's true historical selling prices for specific products.

Consumers who shop in Defendant's stores do not know the true historical prices or sales histories of the products that they have viewed and purchased. They do not know that the discounts offered are false, or that the false discounting practices extend to all of Defendant's products. A reasonable person under the circumstances could not have conducted the type of investigation necessary to uncover Defendants' violations of UTPA.

96.    Absent class members will learn of the scheme for the very first time upon court-ordered class notice in this case.

## COUNT II
### Fraud – Intentional Misrepresentation and Concealment
### (By Plaintiff and the Class)

97.    Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

98.    Plaintiff pleads this claim under Oregon law.

99.    Defendant made false or misleading statements of fact concerning the existence of and the amounts of price reductions because, as explained herein, the false reference prices advertised in connection with products offered in JCF retail stores misled and continue to mislead customers into believing the products are comparable in quality to higher quality products sold at higher reference prices on a regular basis for a reasonably substantial period of time and were actually being sold by competitors in the area at the advertised reference prices.

100.    Defendant knew that its representations were false when made, or at the very least, were made recklessly and without regard for their truth. Defendant knew that the items Plaintiff and the Class purchased had rarely, if ever, been offered or sold at the "comparable value" reference price by competitors in the area.

101.     Defendant's representations were made with the intent that Plaintiff and the Class rely on the false representations and spend money they otherwise would not have spent, purchase items they otherwise would not have purchased, and/or spend more money for an item than they otherwise would have absent the deceptive marketing scheme.

102.     Defendant engaged in this fraud to the Plaintiff and the Class's detriment to increase Defendant's own sales and profits.

103.     Plaintiff and the class reasonably relied on Defendant's representations. Absent Defendant's misrepresentations, Plaintiff and the Class would not have purchased the items they purchased from Defendant, or, at the very least, they would not have paid as much for the items as they ultimately did. Plaintiff and the Class's reliance was a substantial factor in causing them harm.

104.     Had the omitted information been disclosed, Plaintiff reasonably would have behaved differently. Among other things, Plaintiff would not have purchased the items he purchased from Defendant or, at the very least, would not have paid as much for the items as he ultimately did.

105.     As a direct and proximate result of the above, Plaintiff and the Class have suffered damages in an amount to be proven at trial.

106.     Plaintiff and the Class are also entitled to punitive or exemplary damages. Defendant, through its senior executives and officers, undertook the illegal acts intentionally or with conscious disregard of the rights of Plaintiff and the Class, and did so with fraud, malice, and/or oppression. Based on the allegations above, Defendant's actions constituted fraud because Defendant intended to and did deceive and injure Plaintiff and the Class. Defendant's actions constituted malice because Defendant acted with the intent to and did cause injury to Plaintiff and

the Class, and also because Defendant's deceptive conduct was done with a willful and knowing disregard of the rights of Plaintiff and the Class.

## COUNT III
### Unjust Enrichment
### (By Plaintiff and the Class)

107.    Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

108.    As alleged in detail above, Defendant's false and misleading advertising caused Plaintiff and the class to purchase the products and to pay a price premium for these products.

109.    In this way, Defendant received a direct and unjust benefit at Plaintiff's expense, which Plaintiff conferred upon the Defendant.

110.    Defendant was aware of the benefit and its retention of same.

111.    In the alternative only, due to Defendant's misrepresentations, its contracts with Plaintiff are void or voidable.

112.    Plaintiff and the Class seek restitution and, in the alternative, rescission.

## PRAYER FOR RELIEF

**WHEREFORE**, on behalf of himself and the proposed Class, Plaintiff requests that the Court order relief and enter judgment against Defendant as follows:

a)  Declare this action to be a proper class action, certify the proposed Class, and appoint Plaintiff and his counsel to represent the Class;

b)  Declare that the delayed discovery rule, pursuant to, without limitation, ORS 646.638(6), applies and that the applicable limitations period—and the corresponding class period— extends back to the very first date that Defendant began engaging in the unlawful conduct alleged herein;

c) Order Defendant to pay statutory damages of $200 or actual damages, whichever is greater, to Plaintiff and each member of the Class, pursuant to, without limitation, ORS 646.638(1) and 646.638(8)(a);

d) Order Defendant to pay punitive damages to Plaintiff and each member of the Class in an amount to be determined at trial, pursuant to, without limitation, ORS 646.638(1) and 646.638(8)(b);

e) Permanently enjoin Defendant from engaging in the unlawful conduct alleged herein, including enjoining Defendant from failing to clearly and conspicuously identify in the advertisement the origin of the price that Defendant is comparing to Defendant current price, pursuant to, without limitation, ORS 646.638(1), ORS 646.638(8)(c) and ORS 646.636;

f) Order that Defendant maintain the following records for at least two years from the date of each advertisement and/or offer for sale for auditing purposes to ensure compliance with the ordered injunctive relief:

   (1) the advertised reference price for each product (i.e., the ticketed price from which the discount is calculated);

   (2) the source of the reference price including, if the source of the reference price is a different product, the identification of that other product and the evidence of that other product's price; and

   (3) the offer price and/or net selling price of each item; and (4) any sale event discount percentage and/or any other discount that was advertised and/or applicable to each product;

Class Action Allegation Complaint          33

g) Retain jurisdiction to monitor Defendant's compliance with the permanent injunctive relief;

h) Order any other equitable relief the Court deems appropriate, pursuant to, without limitation, ORS 646.638(1), ORS 646.638(8)(c) and ORS 646.636

i) Order Defendant to pay attorneys' fees, costs, and pre-judgment and post-judgment interest to the extent allowed by law; and

j) Order any other relief to which Plaintiff and members of the Class are justly entitled.

## JURY DEMAND AND NOTICE TO ATTORNEY GENERAL

Plaintiff and the Class demand a trial by jury on all issues so triable. Further, upon filing of this action, this Complaint shall be mailed to the Attorney General of the State of Oregon, and proof of receipt of same shall be filed with the Court.

Respectfully submitted,

Dated: August 15, 2025

*/s/ Ryan Casey*
M. Ryan Casey, OSB # 152824
THE CASEY LAW FIRM, LLC
PO Box 2301-417
Silverthorne, CO 80498
Email: ryan@rcaseylaw.com

Gillian Wade (*pro hac vice* forthcoming)
WADE KILPELA SLADE LLP
2450 Colorado Avenue, Suite 100E
Santa Monica, CA 90404
Tel: (310) 667-7273
Fax: (424) 276-0473
Email: gwade@waykayslay.com

Edwin J. Kilpela, Jr. (*pro hac vice* forthcoming)
WADE KILPELA SLADE LLP
6425 Living Place, Suite 200
Pittsburgh, PA 15206

Phone: (412) 314-0515
Email: ek@waykayslay.com

Evan E. North (*pro hac vice* forthcoming)
NORTH LAW PLLC
1900 Market Street, Suite 800
Philadelphia, PA 19103
Phone: (202) 921-1651
Email: evan@northlawpllc.com

*Attorneys for Plaintiff and the Proposed Class*