**M. Ryan Casey, OSB # 152824**
ryan@rcaseylaw.com
THE CASEY LAW FIRM, LLC
PO Box 2301-417
Silverthorne, CO 80498
Tel: (970) 372-6509

*Lead / Local Counsel for Plaintiff*

*(Additional counsel listed on signature page)*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| SEAN LEYDEN, individually and on behalf of all others similarly situated,<br><br>             Plaintiff,<br><br>     v.<br><br>J. CREW GROUP, LLC, a Delaware limited liability company,<br><br>             Defendant. | Case No.: 3:25-cv-01448-AB<br><br>**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** |

Plaintiff's Opposition to
Defendant's Motion to Dismiss

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ iii

I.    INTRODUCTION ............................................................................................... 1

II.   BACKGROUND .................................................................................................. 2

    A.    Oregon prohibits retail price comparisons unless a narrow exception applies ............. 2

    B.    J. Crew Factory and its "comparable value" pricing scheme ......................... 5

    C.    Plaintiff's experience with Defendant's deceptive pricing scheme and resulting harm ............................................................................................................... 7

III.  ARGUMENT ........................................................................................................ 8

    A.    Incorporation by reference of Defendant's in-store placards is improper .................... 8

    B.    Plaintiff's allegations satisfy Rule 9(b) ............................................................ 10

    C.    Plaintiff states a claim under the UTPA ......................................................... 15

        1.    Defendant violates ORS 646.608(1)(ee) in multiple respects ........................... 15

            a)    Defendant failed to identify the origin of its compared prices on product advertisements, as required by ORS 646.883(1) ....................... 16

            b)    Defendant advertises price comparisons that do not comply with ORS 646.883(2) ....................................................................................... 18

            c)    Defendant uses the term "sale" and advertises percentage-off discounts without identifying the origin of the comparison price, in violation of ORS 646.885 ....................................................... 21

        2.    Defendant's "comparable value" pricing scheme uses false or misleading representations of fact concerning its claimed price reductions, in violation of ORS 646.608(1)(j) and (1)(u) ................................... 22

        3.    Defendant makes false or misleading representations of fact concerning offering prices, in violation of ORS 646.608(1)(s) ........................... 23

        4.    Defendant misrepresents the characteristics and comparative quality of its JCF goods and advertises them with intent not to provide the goods as advertised, in violation of ORS 646.608(1)(e) and (1)(i). ............................... 25

5.    Plaintiff plausibly alleges that Defendant acted willfully ..................................25

6.    Plaintiff plausibly alleges ascertainable loss and causation .............................28

D.    Plaintiff states a claim for intentional misrepresentation / concealment.....................28

E.    Plaintiff states a claim for unjust enrichment ...............................................31

IV.    CONCLUSION ....................................................................................................32

## TABLE OF AUTHORITIES

CASES                                                                                     Page(s)

*Asarco, LLC v. Union Pac. R.R. Co.*,
765 F.3d 999 (9th Cir. 2014) ........................................................................................26

*Babaeva v. J. Crew Group, LLC*,
No. 23-1695, 2023 U.S. Dist. LEXIS 199441 (N.D. Cal. Nov. 6, 2023)......................................27

*Branca v. Nordstrom, Inc.*,
No. 14-2062, 2015 U.S. Dist. LEXIS 99157 (S.D. Cal. Mar. 19, 2015) ......................................14

*Branca v. Nordstrom, Inc.*,
No. 14-2062, 2015 U.S. Dist. LEXIS 176888 (S.D. Cal. Oct. 9, 2015) ......................................14

*Carvalho v. HP, Inc.*,
No. 21-8015, 2022 U.S. Dist. LEXIS 112577 (N.D. Cal. June 24, 2022) ....................................15

*Caterpillar Inc. v. Williams*,
482 U.S. 386 (1987)..................................................................................................10

*City of Portland v. HomeAway.com, Inc.*,
240 F. Supp. 3d 1099 (D. Or. 2017)................................................................................9

*Clark v. Eddie Bauer*,
No. 20-1106, 2021 U.S. Dist. LEXIS 64280 (W.D. Wash. Apr. 1, 2021)....................................16

*Clark v. Eddie Bauer*,
2024 U.S. App. LEXIS 1066 (9th Cir. Jan. 17, 2024) ..................................................16

*Clark v. Eddie Bauer LLC*,
770 F. Supp. 3d 1271 (W.D. Wash. 2025).......................................................17, 19, 27

*Covell v. Nine W. Holdings, Inc.*,
No. 17-1371, 2018 U.S. Dist. LEXIS 12437 (S.D. Cal. Jan. 25, 2018).................................11

*Dinucci v. Onpoint Cmty. Credit Union*,
No. 21-122, 2021 U.S. Dist. LEXIS 218650 (D. Or. Aug. 16, 2021) ....................................23

*Ivie v. Mission Rock Residential LLC*,
No. 21-1122, 2022 U.S. Dist. LEXIS 122355 (D. Or. May 27, 2022) ....................................30

*Jacobo v. Ross Stores, Inc.*,
No. 15-4701, 2016 U.S. Dist. LEXIS 86958 (C.D. Cal. Feb. 23, 2016) ................................12

*Knievel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005) ................................................................8

*Lee v. City of L.A.*,
    250 F.3d 668 (9th Cir. 2001) ..................................................................8

*Lee v. City of San Diego*,
    No. 18-0159, 2019 U.S. Dist. LEXIS 2725 (S.D. Cal. Jan. 7, 2019).......................9

*Martell v. GM LLC*,
    492 F. Supp. 3d 1131 (D. Or. 2020) .......................................................28

*McCarrell v. RugsUSA, LLC*,
    No. 25-0454, 2025 U.S. Dist. LEXIS 151958 (D. Or. Aug. 7, 2025) ............................. *passim*

*Morrow Equip. Co., LLC v. Stonebridge, Inc.*,
    613 F. Supp. 3d 1355 (D. Or. 2020) .......................................................32

*Neubronner v. Milken*,
    6 F.3d 666 (9th Cir. 1993) ..............................................................10, 11

*Nicosia v. Amazon.com, Inc.*,
    834 F.3d 220 (2d Cir. 2016) ..................................................................8

*Pearson v. Philip Morris, Inc.*,
    358 Or. 88 (2015)...........................................................................28

*Press v. J. Crew Grp. Inc.*,
    No. 56-2018-00512503, 2018 WL 7915707 (Cal. Sup. Ct. May 9, 2018) .......................26, 27

*Rael v. Dooney & Bourke, Inc.*,
    No. 16-0371, 2016 U.S. Dist. LEXIS 96175 (S.D. Cal. July 22, 2016) ................................14

*Seegert v. Luxottica Retail N. Am., Inc.*,
    No. 17-1372, 2018 U.S. Dist. LEXIS 121071 (S.D. Cal. July 19, 2018) ................................14

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) ................................................................31

*Sperling v. DSWC, Inc.*,
    699 F. App'x 654 (9th Cir. 2017) ........................................................14, 15

*State ex rel. Redden v. Disc. Fabrics, Inc.*,
    289 Or. 375 (1980)...........................................................................26

*Taylor v. Nike, Inc.*, No. 16-0661,
　2017 U.S. Dist. LEXIS 22875 (D. Or. Feb. 17, 2017) ............................................. 14

*Unigestion Holdings, S.A. v. UPM Tech., Inc.*,
　580 F. Supp. 3d 932 (D. Or. 2022) ...................................................................... 30

*United States ex rel. Vatan v. QTC Med. Servs.*,
　721 F. App'x 662 (9th Cir. 2018) ........................................................................ 10

*United States v. Austin*,
　54 F.3d 394 (7th Cir. 1995) ................................................................................ 27

*United States v. Ritchie*,
　342 F.3d 903 (9th Cir. 2003) ................................................................................ 8

*Vess v. Ciba-Geigy Corp. USA*,
　317 F.3d 1097 (9th Cir. 2003) ............................................................................ 10

*Wilson v. Gutierrez*,
　261 Or. App. 410 (2014) ..................................................................................... 32

## STATUTES

ORS 646.605 ........................................................................................................ 1, 25

ORS 646.608 .......................................................................................................... *passim*

ORS 646.608(1)(e) ............................................................................................ 4, 15, 25

ORS 646.608(1)(i) ............................................................................................. 5, 15, 25

ORS 646.608(1)(j) ..................................................................................... 3, 15, 18, 22, 23

ORS 646.608(1)(s) ............................................................................................ 4, 15, 24

ORS 646.608(1)(u) ............................................................................................ 5, 15, 22

ORS 646.608(1)(ee) ......................................................................................... 3, 15, 16, 22

ORS 646.883 ...................................................................................... 1, 3, 4, 15, 16, 18, 21

ORS 646.885 .......................................................................................... 15, 16, 21, 22, 27

**RULES**

Fed. R. Civ. P. 8..................................................................................................................31

Fed. R. Civ. P. 9..............................................................................................................1, 13

Fed. R. Civ. P. 12..............................................................................................................27

**REGULATIONS**

16 C.F.R. 233.2 ..............................................................................................................2, 20

Or. Admin. R. 137-020-0010(2).........................................................................................3

Or. Admin. R. 137-020-0010(5).....................................................................................4, 19

Or. Admin. R. 137-020-0010(6)..............................................................1, 3, 4, 18, 19, 21, 23

**OTHER**

Form 10-K for J.Crew Group, Inc. for fiscal year ending February 2, 2008 ....................................5

Or. Atty. Gen., Order Adopting Rules 20-010, 20-015, and 20-030
Pursuant to the Unlawful Trade Practices Act (July 20, 1976) ........................................................3

## I.    INTRODUCTION

Defendant's national, one-size-fits-all pricing model at its J. Crew Factory ("JCF") stores collides head-on with Oregon's uniquely restrictive rules for comparative pricing. Oregon's scheme begins with a prohibition: a retailer may not advertise discounts from a reference price unless it satisfies one of a few narrow exceptions. OAR 137-020-0010(6). The state also requires that any comparative price advertisement clearly identify the origin of the price being compared. ORS 646.883(1). Defendant's motion sidesteps these and other structural features of Oregon law and unsuccessfully attempts to shoehorn JCF's nationwide pricing scheme into Oregon's framework. Defendant contends that these strict requirements are satisfied by small print on a generic sign stating that JCF's reference prices are "based on prices at which similar merchandise has been offered" by its main-line J. Crew ("JC") stores and other retailers—an approach that, by Defendant's own account, merely reflects subjective "opinions" about what items "*might* cost at other stores." Mot. 1, 6, 18–19 (emphasis added).

That concession supports Plaintiff's core theory: JCF's "comparable value" prices are not tethered to actual prices charged by competitors in the area for substantially similar goods, as Oregon law says they must be. Even if the Court were to consider the content of Defendant's in-store placard for purposes of this motion (and it should not), the purported "disclosure" on the signage is irreconcilable with Oregon's requirements. If anything, the signage confirms that Defendant's national approach to pricing and discounting may be permissible elsewhere, but not under Oregon's demanding, fact-based regulatory regime.

As a result of these practices, Plaintiff adequately alleges multiple independent violations of Oregon's Unlawful Trade Practices Act ("UTPA"), ORS 646.605 *et seq.*—each meeting Rule 9(b)'s standard—along with multiple cognizable theories of ascertainable loss and causation.

Plaintiff also states claims for intentional misrepresentation, concealment, and—in the alternative—unjust enrichment. At most, Defendant's motion previews factual issues and defenses that must be resolved on a factual record, not on the pleadings. Defendant has identified no deficiency in the Complaint; its motion should be denied.

## II.    BACKGROUND

### A.    Oregon prohibits retail price comparisons unless a narrow exception applies.

Federal and Oregon law both address the pernicious effects of misleading price comparisons. Begin with the federal scheme, which directly addresses the type of comparative pricing at issue in this litigation. According to FTC regulations:

> [One] form of bargain advertising is to offer a reduction from the prices being charged either by the advertiser or by others in the advertiser's trade area for merchandise of like grade and quality – in other words, comparable or competing merchandise – to that being advertised. Such advertising can serve a useful and legitimate purpose when it is made clear to the consumer that a comparison is being made with other merchandise and the other merchandise is, in fact, of essentially similar quality and obtainable in the area. *The advertiser should, however, be reasonably certain, just as in the case of comparisons involving the same merchandise, that the price advertised as being the price of comparable merchandise does not exceed the price at which such merchandise is being offered by representative retail outlets in the area.* For example, retailer Doe advertises Brand X pen as having "Comparable Value $15.00". Unless a reasonable number of the principal outlets in the area are offering Brand Y, an essentially similar pen, for that price, this advertisement would be deceptive.

16 CFR 233.2(c) (emphasis added). In short, when a retailer advertises a "comparable value" reference price, the retailer must be reasonably certain that the advertised comparison price does not exceed the actual, prevailing price at which essentially similar goods are actively offered by its principal competitors in the area. *Id.*

Oregon takes a more stringent approach: retail price comparisons are *presumptively unlawful* and permitted only if the seller can *prove* it satisfies one of a few enumerated exceptions.

Under the UTPA, a seller may not make "false or misleading representations of fact concerning the reasons for, existence of, or amounts of price reductions." ORS 646.608(1)(j). The Legislature added further specificity: as a general rule, "a price comparison in an advertisement" is *unlawful unless*, (1) "[t]he seller clearly and conspicuously identifies in the advertisement the origin of the price that the seller is comparing to the seller's current price," (2) "[t]he price comparison is in compliance with ORS 646.608(1)(j) and the rules adopted under ORS 646.608(4)," and (3) "compliance is established based on facts provable by the seller." ORS 646.883. A violation of ORS 646.883 or 646.885 is unlawful under the UTPA. *Id.* 646.608(1)(ee).

To supplement these statutory prohibitions, the Oregon Attorney General promulgated a rigorous administrative rule that is intentionally stricter than the FTC's guidelines. In adopting the rule, the Attorney General concluded that the FTC "guidelines are not satisfactory for either the consuming public, or the business community, because they are too general and contain too many vague terms." Order Adopting Rules 20-010, 20-015, and 20-030 Pursuant to the UTPA, at 4 (July 20, 1976) (attached as Exhibit A to the Declaration of Ryan Casey). Oregon's price comparison rule was therefore adopted to provide a "precise standard" with practical guidance for interpreting ORS "646.608(1)(j) [which prohibits] misrepresentations regarding the reasons for, existence of, or amounts of price reductions." *Id.* at 2. The rule itself confirms its purpose: "This rule is intended to define types of price comparisons which are in violation of that section, by establishing permissible types of reference price advertising." OAR 137-020-0010(2).

Oregon's administrative rule also begins with a prohibition: a seller may not "represent[] that goods are available for sale or lease by it at an offering price less than a reference price unless such reference price comes within any one of the [enumerated] exceptions." OAR 137-020-0010(6). The rule establishes seven permissible types of reference price advertising. *See* OAR 137-

020-0010(6)(a)–(g). A reference price is per se deceptive unless it fits squarely within one of the seven exceptions.

The one exception at issue in this case—subsection (6)(c)—allows comparable value pricing only when "an *identified or identifiable competitor* is or has in the recent regular course of its business offered to make good faith sales of the *same or similar goods*" at the advertised reference price. OAR 137-020-0010(6)(c) (emphasis added). To qualify as "similar," the "goods associated with a reference price" must be "*similar in each significant aspect*, including size, grade, quality, quantity, ingredients, utility and operating characteristics, to the offered goods." OAR 137-020-0010(5)(g) (emphasis added). A "competitor" is "a retail outlet *in the person's geographic market area* with whom the person *in fact competes for sales*." OAR 137-020-0010(5)(c) (emphasis added). There is no exception that permits a seller to determine a comparative price based on its opinion of an item's value. Nor may a seller rely on the price of higher-grade merchandise or on atypical prices outside the seller's genuine competitive market.

Together, Oregon's price-comparison statutes and rules make clear that price comparison advertisements are prohibited in Oregon unless *all* of the following criteria are satisfied: (a) the reference price reflects a bona fide price, (b) offered by a true local competitor, (c) in the recent regular course of its business, (d) for an item that is similar in each significant aspect, and (e) the origin of the price is clearly and conspicuously displayed on the advertisement. Further, sellers must be able to show their work, as "compliance is established based on facts provable by the seller." ORS 646.883(2).

The UTPA also prohibits businesses from: making false or misleading representations of fact concerning the offering price of, or the person's cost for goods, *id.* 646.608(1)(s); representing that goods have characteristics that they do not have, *id.* 646.608(1)(e); advertising goods with

intent not to provide the goods as advertised, *id.* 646.608(1)(i); and any other unfair or deceptive conduct in trade or commerce, *id.* 646.608(1)(u), which may be specified in regulations promulgated by the Oregon Attorney General.

### B.    J. Crew Factory and its "comparable value" pricing scheme

Defendant operates a nationwide retail clothing business, selling through its website and hundreds of stores, including in Oregon. Compl. ¶ 2. Its two main divisions—JC and JCF—feature similar styles, but their products differ markedly, both in quality (such as materials, stitching, and construction) and price. *Id.* As the company explains, JC sells higher-end clothing, while JCF sells lower-quality versions "made at lower costs and sold at lower price points."[1] *Id.* JCF items are produced exclusively for JCF stores and are not JC overstock. *Id.* Further, the two divisions do not compete with one another; they target different customer bases and operate in distinct markets, with JCF competing primarily against other factory outlet stores. *Id.* ¶¶ 2, 31–32, 37.

JCF markets its products in-store as steeply discounted from inflated "comparable value" prices, which are displayed on every price tag. *Id.* ¶ 3. These reference prices are fictitious benchmarks, untethered to the prevailing market prices of JCF goods or goods of comparable quality. *Id*. Instead, they skew toward the higher price range of products sold by JC or JC's competitors (as opposed to JCF's competitors). *Id*. JCF's "comparable value" prices are rarely, if ever, the applicable prices for JCF products, and they exceed the prices at which similar items are offered by comparable retail outlets in the same geographic area. *Id.* ¶¶ 24, 36–37.

JCF's "comparable value" representations appear on price tags and in other in-store advertisements. These representations do not specify the origin or basis of the comparison prices,

---

[1] Form 10-K for J.Crew Group, Inc. for fiscal year ending February 2, 2008, at p. 4, https://investors.jcrew.com/static-files/28b27e95-f6de-4d39-9b11-2cb9bd3370a3.

leaving consumers unable to discern what the higher prices represent or whether they are tied to any specific competitor's goods sold in the market. *Id.* ¶¶ 24, 28. Indeed, JCF's online disclosure admits the prices are merely "based on prices at which similar merchandise has been offered" by JC or other retailers—further confirming the deception. *Id.* ¶ 26. In truth, the "comparable value" prices are not anchored to any lawful benchmark: they appear either to be entirely fabricated by Defendant or derived from superficially similar, yet indisputably higher-quality, merchandise. *Id.* ¶¶ 3, 26.

Defendant uses this deceptive pricing scheme to create a false sense of savings and urgency, tricking consumers into believing they are getting special bargains on products of "comparable value." *Id.* ¶¶ 4, 22–25. Based on JCF's advertisements, consumers reasonably believe the reference prices represent actual sales prices for essentially similar goods with a "comparable value." *Id.* ¶ 26.[2] This strategy not only drives sales that might not otherwise occur, but it also enables JCF to charge higher prices by falsely suggesting its products are worth far more than they are, as confirmed by market research. *Id.* ¶¶ 5, 14-15, 22–23.

Defendant knew or should have known that its conduct violated Oregon law. *Id.* ¶¶ 80, 84–85. The deceptive pricing scheme is by design, has been ongoing for years, is pervasive throughout JCF's Oregon stores, and is central to Defendant's business model, which is predicated on misrepresenting discounts through false "comparable value" prices. *Id.* ¶¶ 6, 22, 32, 58. In addition, Defendant has already been sued for the same conduct under California's consumer-protection laws, confirming that it was on notice that its practices were unlawful. *Id.* ¶ 80.

---

[2] The illusion of savings is reinforced on customers' receipts, which display the supposed "savings" the customer has received. Compl. ¶ 38.

### C.    Plaintiff's experience with Defendant's deceptive pricing scheme and resulting harm

On June 7, 2025, Plaintiff visited Defendant's JCF store at Cascade Station in Portland, Oregon. *Id.* ¶ 41. He browsed the store's merchandise, each item displaying a tag with an inflated "comparable value" price. *Id.* ¶ 42. As a result, "Plaintiff believed he was able to pay significantly less than the value of the Products based on the discounts being offered and what they normally sell for in the retail marketplace." *Id.* In reality, the "comparable value" prices had no connection to the prevailing market prices of similar goods. *Id.* ¶¶ 35–37 (analyzing each product purchased alongside competitor prices), 46. Nor were the items he purchased previously offered at those prices at JC, JCF, or anywhere else. *Id.* ¶ 46.

Believing these discounts to be genuine, Plaintiff relied on these representations and was induced to purchase several items, including shirts, shorts, a hoodie, and a belt—all offered at steep markdowns from their supposed "comparable value" prices. *Id.* ¶¶ 34–37, 42.[3] Absent Defendant's "comparable value" representations, Plaintiff would not have purchased the products or would have paid less for them. *Id.* ¶¶ 42, 87. Plaintiff thus paid Defendant's regular prices under the false belief that he was obtaining a better deal that he actually was getting. *Id.* ¶ 47. And "[r]egardless of whether Plaintiff saw and relied on the price representations, he still purchased goods at inflated prices that Defendant was able to charge as a result of the falsely listed reference prices." *Id.* ¶ 43. Plaintiff was also harmed by expending funds as part of an illegal transaction. *Id.* ¶¶ 48, 50.

---

[3] At checkout, the deception continued. Plaintiff's receipt repeated the fictitious "comparable value" prices, listed each discount, and announced that he had "saved" $318.45 on his purchases. *Id.* ¶ 45. These representations reinforced Defendant's false narrative that Plaintiff was securing exceptional bargains. *Id.*

On August 15, 2025, Plaintiff filed a class action complaint alleging violations of Oregon's UTPA, intentional misrepresentation and concealment, and unjust enrichment. *See* Compl. ¶¶ 66–112. On behalf of a class of Oregon purchasers, Plaintiff seeks declaratory and injunctive relief, the greater of actual or $200 statutory damages, punitive damages, restitution or rescission, judicial interest, and attorneys' fees and costs. *Id*. ¶¶ 89, 105–06, 112, Prayer for Relief.

## III.    ARGUMENT

### A.    Incorporation by reference of Defendant's in-store placards is improper.

Defendant improperly asks the Court to treat photographs of in-store signage regarding its pricing policy as incorporated into the Complaint. That request fails at the threshold: Plaintiff does not refer to the placards, does not rely on them, and they do not form the basis of any claim.

On a motion to dismiss, courts generally "must disregard facts that are not alleged on the face of the complaint or contained in documents attached to the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (citation omitted). However, incorporation by reference of an extrinsic document may be proper when "the plaintiff *refers extensively* to the document or the document *forms the basis* of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (emphasis added); *see also Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001) (incorporation may be proper when a complaint "necessarily relies" on a document and the document's authenticity is not in dispute). "It must also be clear that there exist[s] no material disputed issues of fact regarding the relevance of the document." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 231 (2d Cir. 2016) (quotation omitted).

Defendant falls well short of the standard for incorporation by reference. Plaintiff does not refer extensively to the in-store placard; he does not refer to them at all.[4] Nor does the signage (or

---

[4] The Complaint alleges on information and belief that Defendant's pricing disclosure, which is available on its website, does not appear in stores. Compl. ¶ 26. Plaintiff's reference to the website

the absence of signage) form the basis of Plaintiff's claims. Nothing in the Complaint depends on the existence, content, visibility, or prominence of any in-store signage. The alleged UTPA violations arise from the representations on Defendant's price advertisements themselves, not from generalized storewide policy statements. Plainitff alleges that Defendant failed to identify the origin of its prices in the advertisements themselves and that the reference prices are not tied to bona fide prices offered by identified or identifiable competitors for essentially similar goods. The placards are wholly irrelevant to Plaintiff's factual allegations and theories of liability because they merely explain a nationwide pricing policy. They do not supply an origin for any particular price or tie any particular "comparable value" price to an identified or identifiable competitor. They are entirely collateral to the Complaint and cannot be treated as documents the pleading necessarily relies upon.

Even if the placards were relevant to a *defense* (they are not), incorporation would still be improper. *See, e.g.*, *Lee v. City of San Diego*, No. 18-0159, 2019 U.S. Dist. LEXIS 2725, at *8-*12 (S.D. Cal. Jan. 7, 2019) (declining to incorporate body camera videos where complaint was not based on videos); *City of Portland v. HomeAway.com, Inc.*, 240 F. Supp. 3d 1099, 1112 (D. Or. 2017) (declining to incorporate "supposedly contradictory evidence" offered by Defendant because it was not a document on which the complaint "necessarily relies"). The inquiry is whether the *claims* are necessarily based on a document, such that the document is integral to the complaint itself and not just relevant to the case. Because Plaintiff's claims are in no way based on the placards, incorporation is improper.

---

disclosure was only to illustrate that, even where disclosures exist, they are inadequate or non-compliant.

Defendant also implicitly asks the Court to assume that the placards were in fact present and displayed uniformly and conspicuously in three Oregon retail locations and then faults Plaintiff's counsel for not referencing them. Mot. at 2. That is not how incorporation works. The doctrine prevents a plaintiff from omitting or selectively quoting documents that form the basis of the claim; it does not allow a defendant to introduce extrinsic materials to undermine well-pleaded allegations or to smuggle in disputed facts under the guise of "context." Adopting that approach would expand incorporation beyond recognition and undercut the well-settled rule that the plaintiff is "the master of the complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 398–399 (1987).

Finally, even if the placards were considered for limited context, that would not resolve the motion. The adequacy, visibility, and prominence of signage are fact questions dependent on store layout, consumer vantage point, and the relationship between the placard and the point of sale. At this stage, the Court cannot determine whether a placard is clear and conspicuous or whether a reasonable consumer would connect it to a "comparable value" price printed on a tag, which are classic issues of fact. Incorporation is thus improper, unnecessary, and would not alter the Court's analysis of the sufficiency of the Complaint.

### B.    Plaintiff's allegations satisfy Rule 9(b).

Federal Rule of Civil Procedure 9(b)'s purpose is to ensure a plaintiff identifies "the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) (quotation omitted). When the rule applies, a complaint must identify "the who, what, when, where, and how" of the alleged misconduct. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted). Importantly, allegations of fraud based on information and belief are sufficient when "the relevant information is within the defendant's exclusive possession and control," so long as the plaintiff alleges the factual basis for the belief. *United States ex rel. Vatan v. QTC Med. Servs.*, 721 F. App'x

662, 663 (9th Cir. 2018); *accord Neubronner*, 6 F.3d at 672. This rule is especially pertinent in cases predicated on internal pricing data and determinations that are uniquely within the defendant's possession. *See McCarrell v. RugsUSA, LLC*, No. 25-0454, 2025 U.S. Dist. LEXIS 151958, at *11 (D. Or. Aug. 7, 2025) ("[A]t this stage of litigation 'Plaintiff cannot reasonably be expected to have detailed personal knowledge of [Defendant's] internal pricing policies.'" (quoting *Covell v. Nine W. Holdings, Inc.*, No. 17-1371, 2018 U.S. Dist. LEXIS 12437, at *4 (S.D. Cal. Jan. 25, 2018))).

Here, Plaintiff satisfies each of the *Vess* factors:

- Who: Defendant, the seller that sets and advertises the challenged "comparable value" prices for JCF products. Compl. ¶ 2.

- What: Advertising fictitious "comparable value" reference prices without identifying the origin of those prices to create the false appearance of substantial discounts. *Id.* ¶¶ 3–4, 22–26, 30, 41–44, 51.

- When: Plaintiff purchased on June 7, 2025; the scheme has been ongoing and has harmed Oregon consumers for years. *Id.* ¶¶ 41, 58.

- Where: As to Plaintiff, the JCF location in Portland; as to other putative class members, that store and others in Oregon. *Id.* ¶¶ 41, 58.

- How: By advertising false comparative prices that led Plaintiff and putative class members to purchase Defendant's products under the false impression that they were receiving a substantial discount. *Id.* ¶¶ 5, 22–26, 42, 47.

Plaintiff also provides the "why." The Complaint alleges a storewide fake discount scheme designed to deceive customers into thinking they are getting bargains based on discounts from fictitious and inflated "comparable value" prices. Each of these allegations aligns with Oregon's

framework for determining when a reference price is improper or deceptive. The "comparable value" prices are false and deceptive because neither JCF products nor essentially similar products are sold at the ticketed prices. *Id.* ¶¶ 38, 46. To the extent Defendant's "comparable value" prices are comparison prices of similar-looking—but superior quality—styles sold at Defendant's main-line JC stores, Plaintiff alleges why such reference prices are deceptive and improper under Oregon law.[5] *Id.* ¶¶ 29–33. Plaintiff also alleges why the same is true should reasonable consumers understand Defendant's "comparable value" prices to be comparison prices of similar quality products in the same geographic area. *Id.* ¶ 37. These allegations explain what is false or misleading and *why* it is false, as *Vess* requires.

Moreover, Plaintiff alleges that Defendant's "comparable value" prices for some JCF products appear to be derived from the prices of similar-looking but superior products sold in Defendant's main-line JC stores. *Id.* ¶¶ 34–35. For others, Plaintiff alleges that substantially similar goods were available locally from JCF's *true* competitors at prices far below JCF's "comparable value" price. *Id.* ¶ 37. And Plaintiff alleges that JCF products are offered exclusively at JCF and never at the advertised reference prices. *Id.* ¶¶ 38, 46. These are *precisely* the sort of facts that courts require under Rule 9(b)—and that the court found to be lacking in *Jacobo v. Ross Stores, Inc.*, which Defendant cites. *See* No. 15-4701, 2016 U.S. Dist. LEXIS 86958, at *9 (C.D. Cal. Feb. 23, 2016) ("Plaintiffs must conduct a reasonable investigation into their claims and plead at least some facts to bolster their 'belief' that the 'Compare At' prices were inaccurate. Plaintiffs could allege, for instance, that the items they purchased bore a 'Compare At' price of $X but were sold

---

[5] Plaintiff included two examples of JCF products that Plaintiff purchased that were purportedly discounted from ticketed "comparable value" prices associated with similar looking, but superior in quality, products sold in Defendant's JC retail store. Compl. ¶¶ 34–35.

at other retailers for a lower price of $Y. Or perhaps Plaintiffs could plead facts showing that the purchased items were offered for sale exclusively in Defendant's stores.").

Defendant argues that Plaintiff fails to meet Rule 9(b)'s requirements because the Complaint, (a) is "based primarily on information and belief," (b) lacks details about the "scope, duration, or methodology" of Plaintiff's counsel's investigation, and (c) fails to plead a violation of federal or Oregon law. Mot. at 10–11. None of these arguments has merit.

*First*, Plaintiff's lack of personal knowledge about Defendant's internal pricing policies is to be expected and does not render the Complaint deficient under Rule 9(b). The rule demands particularity, not clairvoyance. Comparable-value pricing is opaque by design: the reference price turns on Defendant's internal choices—or as Defendant now claims, an employee's subjective opinion (Mot. at 18–19)—about comparators and product similarity. Defendant cannot fault Plaintiff for failing to allege information that exists only within its own pricing systems or in the files of unidentified employees. That is precisely why courts in the Ninth Circuit permit information-and-belief pleading in cases such as this, even when applying Rule 9(b). *See RugsUSA*, 2025 U.S. Dist. LEXIS 151958, at *10-*11. Plaintiff need only allege the factual basis for his belief that Defendant's "comparable value" prices are fictitious and misleading reference prices, which he clearly does.

*Second*, Rule 9(b) does not require pleading counsel's investigative methodology. Defendant identifies no authority imposing such a requirement in false reference pricing cases. Rule 9(b) shortcomings in comparative-pricing cases typically arise when plaintiffs offer no substantiation for the alleged falsity of the challenged price representation. Defendant's own cases confirm this point: *Seegert* involved a failure to test the allegedly deceptive representation, and *Rael* involved a conclusory declaration that simply recited the complaint's allegations without

making a single price comparison for any product. *Seegert v. Luxottica Retail N. Am., Inc.*, No. 17-1372, 2018 U.S. Dist. LEXIS 121071, *8–9 (S.D. Cal. July 19, 2018); *Rael v. Dooney & Bourke, Inc.*, No. 16-0371, 2016 U.S. Dist. LEXIS 96175, at *9 (S.D. Cal. July 22, 2016). Those cases are far afield from this one. Plaintiff identifies specific purchases and the "comparable value" prices for those products, and alleges, by way of specific detail, why those reference prices are misleading—because they are derived from superior (and therefore not similar) goods or because actually similar goods are offered at prices far lower than the reference prices. Plaintiff's allegations concerning his counsel's investigation are sufficient because they are "'specific enough to give [D]efendant[] notice of [the] particular misconduct' that Plaintiff alleges." *RugsUSA*, 2025 U.S. Dist. LEXIS 151958, at *11 (quoting *Vess*, 317 F.3d at 1106).

*Third*, Defendant's assertion that the Complaint does not pass muster under Rule 9(b) because it fails to allege violations of Oregon law is simply a repackaging of its merits arguments, which are addressed below. Rule 9(b) governs the specificity of factual allegations, not whether those allegations ultimately state a claim under Oregon law. In any event, Defendant's authorities are inapposite because they all involve California law. *See Sperling v. DSWC, Inc.*, 699 F. App'x 654, 655 (9th Cir. 2017); *Taylor v. Nike, Inc.*, No. 16-0661, 2017 U.S. Dist. LEXIS 22875, at *1-*2 (D. Or. Feb. 17, 2017); *Branca v. Nordstrom, Inc.,* No. 14-2062, 2015 U.S. Dist. LEXIS 99157, at *3-*4 (S.D. Cal. Mar. 19, 2015).[6] None of Defendant's cases (save *RugsUSA*, which Defendant

---

[6] Defendant fails to note that the court in *Branca* rejected the defendant's Rule 9(b) challenge to the plaintiff's amended complaint, which, like this Complaint, alleged the requisite "why" for purposes of Rule 9(b). *See Branca v. Nordstrom, Inc.*, No. 14-2062, 2015 U.S. Dist. LEXIS 176888, at *22 (S.D. Cal. Oct. 9, 2015) ("Plaintiff alleges why the 'Compare At' prices are false as former prices—because they necessarily cannot be former prices or prevailing market prices, as the items were never sold elsewhere for any other price besides the Nordstrom Rack retail price."). Separately, both *Sperling* and *Taylor* involved allegedly deceptive "compare at" prices. But that is where the similarities to this case end. In *Sperling*, the plaintiff failed to allege how or why displaying the manufacturer's suggested retail price ("MSRP") as a "compare at" price was false

cited for different reasons) involve Oregon's uniquely prescriptive price comparison laws. Oregon law is materially different in that it imposes objective, verifiable requirements on sellers to demonstrate compliance with those rules.

### C.    Plaintiff states a claim under the UTPA.

The Complaint alleges multiple independent theories of UTPA liability. *First*, Defendant violates multiple provisions of Oregon's price comparison laws, and each violation independently triggers liability under ORS 646.608(1)(ee). *Second*, Defendant's "comparable value" pricing scheme uses false or misleading representations of fact concerning its claimed price reductions, in violation of ORS 646.608(1)(j), 646.608(1)(u), and the Attorney General's implementing rule. *Third*, Defendant makes false or misleading representations of fact concerning offering prices, in violation of ORS 646.608(1)(s). *Fourth*, Defendant misrepresents the characteristics and comparative quality of its JCF goods, in violation of ORS 646.608(1)(e) and (1)(i). Plaintiff's UTPA claim may proceed based on any one of these theories. Plaintiff also plausibly alleges willfulness, ascertainable loss, and causation.

### 1.    Defendant violates ORS 646.608(1)(ee) in multiple respects.

ORS 646.608(1)(ee) provides that, "[a] person engages in an unlawful practice if in the course of the person's business, vocation or occupation the person … [v]iolates ORS 646.883 or 646.885." Defendant violates ORS 646.608(1)(ee) by: (a) failing to identify the origin of its comparative prices, as required by ORS 646.883(1); (b) advertising price comparisons that are not

---

or deceptive. *See Sperling*, 699 F. App'x at 655. This case does not involve the use of MSRPs as reference prices, nor does it involve non-exclusive products. "Courts allow [non-exclusive product] cases to proceed based on allegations specific to that outlet or retail store exclusively selling the product." *Carvalho v. HP, Inc.*, No. 21-8015, 2022 U.S. Dist. LEXIS 112577, at *12 (N.D. Cal. June 24, 2022) (citations omitted). And in *Taylor*, unlike here, the plaintiff failed to adequately allege why reasonable consumers would find the defendants' pricing representations to be deceptive. *Taylor*, 2017 U.S. Dist. LEXIS 22875, at *15.

in compliance with ORS 646.883(2), which requires substantiation by the seller based on provable facts; and (c) using terms like "sale" and "30% off" to advertise discounts without identifying the origin of the price that Defendant is comparing to JCF's offering price, as required by ORS 646.885. Each violation provides an independent basis for liability under ORS 646.608(1)(ee). *See RugsUSA*, 2025 U.S. Dist. LEXIS 151958, at *19 ("Pursuant to ORS 646.608(1)(ee), a person engages in an unlawful practice if he or she '[v]iolates ORS 646.883 or 646.885.'").

### a)    Defendant failed to identify the origin of its compared prices on product advertisements, as required by ORS 646.883(1).

Oregon sellers advertising price comparisons must "clearly and conspicuously identif[y] in the advertisement the origin of the price that the seller is comparing to the seller's current price." ORS 646.883(1). Defendant does not dispute that both its in-store signage and the individual price tags for its products, which bear a "comparable value" price, are "advertisements." Compl. ¶ 72.

*Clark v. Eddie Bauer* is instructive. No. 20-1106, 2021 U.S. Dist. LEXIS 64280 (W.D. Wash. Apr. 1, 2021), *rev'd on other grounds*, 2024 U.S. App. LEXIS 1066 (9th Cir. Jan. 17, 2024). There, the plaintiff alleged that the defendant's outlet store reference prices were deceptive under Oregon's UTPA because the retailer had never offered the items at those prices. *Id.* at *3. After the plaintiff filed her complaint, the defendant had added the term "comparable value" to its price tags, but the court concluded that this term did not cure the deception because "[a]n opaque reference to a 'comparable value' does not meet [the] requirement" in UTPA that a seller "provide the origin of any such reference price." *Id.* at *8 (citing ORS 646.885(2)). Although the district court concluded that the plaintiff lacked standing to seek injunctive relief related to the "comparable value" price representations (which the retailer added to its tags after Clark's purchase), the Ninth Circuit reversed. *Clark v. Eddie Bauer LLC*, 2024 U.S. App. LEXIS 1066, at *6-*7. On remand, the district court reaffirmed that Eddie Bauer's "comparable value" pricing

remained deceptive and unlawful under the UTPA. *Clark v. Eddie Bauer LLC*, 770 F. Supp. 3d 1271, 1278 (W.D. Wash. 2025). The court explained that, "[u]nder Oregon's UTPA, Eddie Bauer has an obligation to provide the origin of a reference price" but "has not done so." *Id.* at 1278 (citing ORS 646.885(2)). The court agreed with the plaintiff that, "without identifying the comparable item, a consumer has no way of knowing if the price comparison is legitimate or a falsely inflated reference price." *Id.* (cleaned up).

Similarly, in *RugsUSA*, this Court denied a motion to dismiss a UTPA claim based on the defendant's failure to disclose the origin of its reference prices. 2025 U.S. Dist. LEXIS 151958, at *19–20. The Court credited the plaintiff's allegation that the "strikethrough pricing does not contain any disclosures at all about the origin of the strikethrough price." *Id.* at *20.

Here, Defendant admits to using price comparisons when it states that JCF price advertisements "highlight how much a particular item *might* cost at other stores." *See* Mot. at 2 (emphasis added). As in *Eddie Bauer*, Plaintiff alleges that JCF's price advertisements display "comparable value" prices but fail to identify the origin of those prices, such as whether the prices reflect a specific competitor's current price for a substantially similar item available in the Oregon market. Compl. ¶¶ 28, 74. Defendant's advertisements thus violate ORS 646.883(1).

Defendant contends its in-store placards satisfy this requirement, claiming "it is impossible for a customer to purchase an item from [JCF] without seeing them." Mot. at 16. As an initial matter, this argument alone raises a factual dispute precluding dismissal and underscoring the need for discovery. Defendant claims the placards were posted in fitting rooms and at checkout, but the visibility, prominence, and the likelihood that consumers would connect such signage to the price advertisements requires evidence about store layout, consumer experience, and placement.

Whether the placards "clearly and conspicuously" identify the origin of the comparative price is a question of fact that cannot be decided at this stage.

Alternatively, even if the Court incorporates the signage by reference to consider its *content* (which, again, it should not), the placards plainly fail to disclose the "origin" of any compared price within the meaning of ORS 646.883(1). The placards state only that JCF's "comparable value" prices "are determined by [JCF's] in-house merchandising team and based on prices at which similar merchandise has been offered for sale either by J.Crew or other retailers or websites." Mehr Decl., Ex. A. That is a self-referential and unverifiable statement of corporate policy, not a disclosure of an identified or identifiable competitor or a concrete price at which similar goods are actually offered for sale by competitors in the local area. Nothing in those placards tells a consumer whose price is being compared, what product it relates to, or whether the supposed "comparable" price exists in Oregon at all. That is not tantamount to a true origin representation under Oregon law. Thus, the Complaint plausibly alleges that Defendant's in-store advertising violates ORS 646.883(1).

### b)    Defendant advertises price comparisons that do not comply with ORS 646.883(2).

ORS 646.883(2) provides that retail price comparisons must, (a) comply with ORS 646.608(1)(j), (b) comply with rules adopted under ORS 646.608(4), and (c) be "based on facts provable by the seller." ORS 646.608(1)(j), in turn, prohibits "false or misleading representations of fact concerning the reasons for, existence of, or amounts of price reductions." The Attorney General rule, adopted under ORS 646.608(4), expounds on this subsection. The rule begins from the premise that reference price advertising is unlawful *unless* the claimed comparison falls within a specifically defined exception grounded in verifiable market facts. OAR 137-020-0010(6).

Defendant claims its "comparable value" prices are lawful under the exception in subsection (6)(c) of the rule, Mot. at 12, which permits using a reference price that "an *identified or identifiable competitor* is or has in the recent regular course of its business offered to make good faith sales of *the same or similar goods*." OAR 137-020-0010(6)(c) (emphasis added); *see also id.* (5)(c) (defining "competitor"); *id.* (5)(g) (defining "similar goods"). The (6)(c) exception treats the seller's asserted comparator price as a factual representation that must be anchored to a competitor's actual offering price for the same or similar goods, rather than a subjective valuation.

Again, *Eddie Bauer* is instructive. The court held that "the phrase 'comparable value' on garments … is deceptive under Oregon's UTPA" because "without identifying the comparable item, a consumer has no way of knowing if the price comparison is legitimate or a falsely inflated reference price." *Eddie Bauer*, 770 F. Supp. 3d at 1277–78.

Plaintiff plausibly alleges that Defendant's price advertisements fail to satisfy these requirements. He alleges that "Defendant's 'comparable value' prices for JCF products are not prices at which an identified or identifiable competitor is or has in the recent regular course of its business offered to make good faith sales of the same or similar goods." Compl. ¶ 79. While "the basis for Defendant's 'comparable value' calculations is unclear," the prices "are more consistent with main-line JC product prices and the prices of similar products offered by *JC's* direct competitors, as opposed to regular, nondiscounted prices of comparable JCF products or the prices of similar products sold by *JCF's* competitors." *Id.* ¶ 29. "While JCF's 'comparable value' prices may be based upon prices for *similar-looking* styles sold at JC stores or the stores of JC's direct competitors, such a comparison is deceptive for at least three independent reasons: (a) JC and JCF are not competitors; (b) Defendant's JC products and products sold by JC's competitors are of a higher quality than JCF items, which are made to a lower standard to be sold at a lower cost; and

(c) the 'comparable value' prices exceed the actual prices at which essentially similar merchandise has been offered by representative retail outlets in the geographic area." *Id.* ¶ 30. The Complaint includes detailed allegations for each point. *See id.* ¶¶ 31–32 (JC and JCF are not "competitors"); 33–35 (detailing quality differences between JC and JCF products); 36–37 (providing illustrative comparisons to the regular prices of products sold by JCF's closest competitors, none of which reach the purported "comparable value" price).

Defendant all but admits to violating the UTPA by claiming its nationwide "comparable value" prices are "statements of opinion." Mot. at 18. Defendant explains that its so-called in-house merchandising team determines "comparable value" prices based on its subjective judgment about prices offered "by J.Crew or other retailers or websites." Mot. at 6. This is not a competitor-specific or locally verifiable comparison; it is an opaque national estimate. Merely by characterizing its prices as opinions, JCF effectively concedes that its policy does not—and cannot—comply with the objective substantiation requirements that govern comparative pricing in Oregon. Its "comparable value" numbers are neither tied to actual competitors nor grounded in real offers for similar goods within the Oregon market and thus fall outside the sole permissible exception, subsection (6)(c). Neither that exception to Oregon's general prohibition on price comparison nor any other exception permits a seller to base a reference price on its subjective, nationwide assessment of a product's value. This practice also fails the FTC's requirement that a reference price based on similar goods sold by another retailer be a bona fide price offered by "a reasonable number of the principal outlets in the area," for an "essentially similar" product. 16 CFR 233.2(c). Even assuming JCF's "comparable value" prices are tied to specific products sold by *JC* (which, in some cases, they may be), the Complaint explains in detail why those

comparisons are ill-suited based on qualitative differences between the goods and the lack of competition between JC and JCF. *See* Compl. ¶¶ 30–35.

In short, Defendant's "opinion" defense is fundamentally at odds with Oregon law, which requires that "comparable value" representations be anchored to documented competitor pricing for substantially similar goods. Prices framed as opinions cannot satisfy a standard that requires comparison to a competitor's bona fide price.[7] Defendant thus violates OAR 137-020-0010(6) and ORS 646.608(1)(j). By extension, Defendant's prices do not comply with ORS 646.883(2).

> ### c) Defendant uses the term "sale" and advertises percentage-off discounts without identifying the origin of the comparison price, in violation of ORS 646.885.

Price comparison "terms such as 'regular,' 'reduced,' 'sale,' 'usually,' 'originally,' 'clearance,' 'liquidation' and 'formerly' shall identify the origin of the price that the seller is comparing to the seller's current price as the seller's own former price, or in the case of introductory advertisements, the seller's future price." ORS 646.885(1). "Unless the seller states otherwise in the advertisement, use of terms such as 'discount,' '__ percent discount,' '$__ discount,' '__ percent off' and '$__ off' shall be considered to identify the origin of the price that the seller is comparing to the seller's current price as the seller's former price." ORS 646.885(2).

Plaintiff alleges that "[w]hile Defendant runs near-constant 'sale' prices across its product lines, Defendant never identifies 'the origin of the price' being compared to the current sale price."

---

[7] Defendant concedes that "it would be deceitful for J. Crew to fabricate prices or hide crucial information from customers, but it doesn't." Mot. at 13. By acknowledging that the alleged conduct would be unlawful while denying it occurred, Defendant underscores why dismissal is improper. A motion to dismiss tests the sufficiency of the pleadings, not whose factual narrative will ultimately prevail. And the Complaint squarely alleges that Defendant's "comparable value" prices are "entirely fabricated" and "unmoored to any actual price at which competitors are offering 'similar goods' in the area." Compl. ¶ 23. These allegations are supported by specific facts regarding the inflated and unsuitable comparison prices of the items purchased by Plaintiff.

Compl. ¶ 28. In other words, Defendant routinely advertises both category-specific and storewide "sales" and "percent-off" promotions but never discloses the actual basis for the reference price, leaving customers "to guess as to whether Defendant is providing a legitimate sale or not, and whether its products are actually worth the prices offered." *Id.* ¶¶ 34-35, 53. The term "comparable value," on its own, is meaningless because it does not tell consumers what that price is—the seller's current price, a former price, or a bona fide competitor price.

*RugsUSA* is again on point. There, the Court allowed the UTPA claim to proceed because the alleged reference prices were not tied to an actual origin and therefore could not be evaluated as a real discount. *RugsUSA*, 2025 U.S. Dist. LEXIS 151958, at *20–21. JCF's percent-off claims (*see* Compl. ¶ 38) present the same defect: nothing in the advertisement tells the consumer what price is being compared to the current "sale" or percentage-off discounted price. The Complaint plausibly alleges that this obscures whether there is any real discount at all. *See* Compl. ¶¶ 23, 28.

Because ORS 646.885(1) imposes an origin identification obligation whenever the seller uses the word "sale" or advertises a percentage-off discount, and because JCF's advertisements do not identify the price being compared, Plaintiff plausibly alleges a violation of ORS 646.885 that independently establishes liability under ORS 646.608(1)(ee).

> **2.    Defendant's "comparable value" pricing scheme uses false or misleading representations of fact concerning its claimed price reductions, in violation of ORS 646.608(1)(j) and (1)(u).**

As explained above in Part III.C.1, a seller's failure to comply with ORS 646.608(1)(j) and the implementing rule establishes a violation of ORS 646.883 and thus liability under ORS 646.608(1)(ee). In addition, ORS 646.608(1)(j) and (1)(u) each provide an independent basis for liability for the same conduct.

As also explained in detail above, Plaintiff alleges that JCF's "comparable value" prices are "purely fictitious benchmarks that are not tied to the actual prevailing market prices of JCF

products or products of comparable quality," Compl. ¶ 3, and that Defendant represents discounts from prices that were never charged and that do not correspond to real market comparators. *Id.* ¶¶ 23, 24, 29–38, 75. Taken as true, those allegations state a direct violation of ORS 646.608(1)(j).

For the same reasons, Plaintiff also states a claim under ORS 646.608(1)(u), which makes it a violation of UTPA for a person to "engage[] in any other unfair or deceptive conduct in trade or commerce" as defined in implementing rules. *See Dinucci v. Onpoint Cmty. Credit Union*, No. 21-122, 2021 U.S. Dist. LEXIS 218650, at *16–17 (D. Or. Aug. 16, 2021) ("This catchall provision is available to a plaintiff only if the Oregon Attorney General has established a specific rule declaring the conduct to be 'unfair or deceptive in trade or commerce.'"); OAR 137-020-0010(6) ("A person engages in conduct which [is] *unfair or deceptive in trade or commerce* when it represents that goods are available for sale or lease by it at an offering price less than a reference price unless such reference price comes within any one of the following exceptions…") (emphasis added). As explained above, Plaintiff alleges that Defendant's price advertisements are prohibited by Oregon's administrative rule and do not meet the requirements for the one exception claimed by Defendant, subsection (6)(c). *See* Compl. ¶¶ 29 (listing violations of OAR 137-020-0010), 79.

### 3. Defendant makes false or misleading representations of fact concerning offering prices, in violation of ORS 646.608(1)(s).

ORS 646.608(1)(s) prohibits "false or misleading representations of fact concerning the offering price of … goods…"

Both Defendant's "comparable value" prices and the *term* "comparable value" itself violate this provision. Plaintiff alleges that JCF's storewide pricing scheme is based on offering prices that reflect a percentage discount off inflated reference prices, which "are purely fictitious benchmarks that are not tied to the actual prevailing market prices of JCF products or products of comparable quality." Compl. ¶ 3. JCF's "entire business model is predicated on misrepresenting

discounts based on false 'comparable value' prices." *Id.* ¶ 6. And "while the terms of the applicable promotions change frequently, the 'comparable value' price is rarely, if ever, the applicable price for any JCF products." *Id.* ¶ 24. Thus, each and every advertised discount in Defendant's "rotating barrage of promotional offers" is a false or misleading representation of fact concerning the offering price for the relevant items. *Id.* ¶ 38 (citing ORS 646.608(1)(s)). "Reasonable consumers rely on these misrepresentations of fact in concluding that they are achieving substantial savings when, in reality, they are often paying Defendant's regular prices." Compl. ¶ 38.

Aside from the prices themselves, Plaintiff alleges that "*the words* 'comparable value,'" which are present on all (or nearly all) JCF product tags and many in-store advertisements, are "false or misleading representations of fact concerning the offering price of the products." *Id.* ¶ 76, 76 (emphasis added); *see id.* ¶ 3. That phrase communicates not only that the reference price is a bona fide offering price in the marketplace, but also that the JCF product is comparable—in quality, construction, and materials—to goods sold at that higher price. *Id.* ¶¶ 29–30, 33–35. But the implied equivalence is false. Plaintiff alleges that JCF's lower-quality, JCF-exclusive products do not, in fact, have *value* that is *comparable* to products that are actually sold at the reference prices. While those prices *may* be derived from the prices of JC mainline products and products sold by *JC's* direct competitors, such products are made with higher-grade materials, superior construction, and higher production standards than JCF merchandise. *Id.* ¶¶ 29–35. Yet JCF prints those higher prices on advertisements for its own, lower-quality items and uses the "comparable value" legend to misleadingly represent that the JCF items are equivalent in value to the higher-quality goods and that the comparator prices reflect the true "value" of the JCF items. Thus, the words "comparable value" themselves are false or misleading representations of fact that violate ORS 646.608(1)(s).

      **4.    Defendant misrepresents the characteristics and comparative quality of its JCF goods and advertises them with intent not to provide the goods as advertised, in violation of ORS 646.608(1)(e) and (1)(i).**

ORS 646.608(1)(e) prohibits representing that goods have "characteristics" or "qualities" that the goods do not have. ORS 646.608(1)(i) prohibits advertising goods with intent not to provide the goods as advertised.

Defendant's "comparable value" representations necessarily depend on parity in quality between JCF merchandise and the higher-quality merchandise sold by JC and by JC's (as opposed to JCF's) direct competitors, which provide the apparent basis for the reference prices. Compl. ¶¶ 29–30. Those allegations plausibly describe a representation that JCF goods embody the same qualities and characteristics as goods offered at the purported comparator prices. The Complaint also alleges that this implied equivalence is false because JCF goods are made to a lower quality standard than the merchandise offered at the comparator prices Defendant invokes. *Id.* ¶¶ 33–35.

Accepting those allegations as true, Plaintiff plausibly states a claim that Defendant's pricing and advertising misrepresent the characteristics and qualities of JCF goods in violation of ORS 646.608(1)(e) because the "comparable value" prices lead consumers to believe that JCF products possess the same qualities and characteristics ("value") as higher-priced products. The Complaint further alleges a violation of ORS 646.608(1)(i), because JCF is implicitly advertising one thing and delivering another when it anchors JCF's prices to goods of higher quality—as if those were the goods being offered—while selling lower-quality goods. Each provision independently supports denial of dismissal.

      **5.    Plaintiff plausibly alleges that Defendant acted willfully.**

A defendant willfully violates UTPA when it "knew or should have known" its conduct was a violation of that law. ORS 646.605(10). Willfulness "requires no more than proof of ordinary negligence by a defendant in not knowing, when it should have known, that a representation made

by [it] was not true." *State ex rel. Redden v. Disc. Fabrics, Inc.*, 615 P.2d 1034, 1039 (Or. 1980).

For example, in *RugsUSA*, the Court concluded that the plaintiffs sufficiently alleged willfulness

by alleging that RugsUSA's "list prices" were not true "regular or former prices" and that its

advertised discounts did not represent "the true discount" received by the customer. 2025 U.S.

Dist. LEXIS 151958, at *13.

Plaintiff's well-pled allegations of willfulness meet or exceed those in *RugsUSA*. As in

*RugsUSA*, Defendant knew or should have known that its pricing scheme violated the UTPA. The

Complaint alleges multiple reasons why "Defendant knew or should have known that its conduct

was a violation" of the UTPA. Compl. ¶ 80. Plaintiff alleges that Defendant's storewide pricing

scheme consists of "purely fictitious benchmarks that are not tied to the actual prevailing market

prices of JCF products or products of comparable quality." *Id.* ¶ 3. Defendant's "entire business

model is predicated on misrepresenting discounts based on false 'comparable value' prices." *Id.*

¶ 6. "In short, Defendant's sales tactics are not offered in good faith and are made for the sole

purpose of deceiving and inducing consumers into purchasing products they otherwise would not

have purchased." *Id.* ¶ 23. These allegations go beyond ordinary negligence and thus meet the

willfulness standard.

Moreover, Defendant knew or should have known that its pricing scheme was unlawfully

deceptive based on past litigation, including under California's consumer protection laws. *Id.* ¶ 80.

In 2019, J. Crew reached a $24 million settlement in a class action lawsuit alleging violations of

California, New York, and New Jersey law based on a substantively identical deceptive reference

pricing scheme.[8] *See* Agreement of Settlement and Release, *Press v. J. Crew Grp. Inc.*, No. 56-

---

[8] The Court may take judicial notice of that litigation and the resulting settlement. *See Asarco, LLC v. Union Pac. R.R. Co.*, 765 F.3d 999, 1008 n.2 (9th Cir. 2014) (taking judicial notice of settlement agreement at pleading stage). Defendant feigns ignorance of this resolution by suggesting the

2018-00512503, 2018 WL 7915707 (Cal. Sup. Ct. May. 9, 2018). This settlement confirms that Defendant knew or should have known its pricing scheme was deceptive and therefore in violation of the UTPA. *See United States v. Austin*, 54 F.3d 394, 400 (7th Cir. 1995) (evidence of prior settlement admissible to show notice and knowledge).

Finally, two opinions in the *Eddie Bauer* litigation confirm that a retailer's use of the term "comparable value" on advertisements, without more, violates Oregon law. *See Clark v. Eddie Bauer LLC*, 2021 U.S. Dist. LEXIS 64280, at *8 (defendant's "opaque reference to a 'comparable value'" on its product advertisements, "without support for its basis," does not satisfy UTPA's requirement to "provide the *origin* of any such reference price" (citing ORS 646.885(2))); *Clark v. Eddie Bauer LLC*, 770 F. Supp. 3d at 1278 ("Without identifying the comparable item, a consumer has no way of knowing if the price comparison is legitimate or a falsely inflated reference price") (citing ORS 646.885(2)). This case is not just analogous; it applies the same Oregon UTPA provisions to the same pricing tactic. Any retailer still using opaque, subjective, non-competitor-based "comparable value" pricing in Oregon after *Eddie Bauer* necessarily knew or should have known such conduct violated the UTPA.

Accepting all these allegations as true and construing the facts in the light most favorable to Plaintiff, Plaintiff sufficiently alleges willfulness.[9]

---

Complaint refers to a different lawsuit that "was *dismissed* at Rule 12." Mot. at 2. Defendant seems to be referencing, not *Press*, but a case that was dismissed because the plaintiff had agreed to arbitrate disputes. *Babaeva v. J. Crew Group, LLC*, No. 23-1695, 2023 U.S. Dist. LEXIS 199441, at *4-*5 (N.D. Cal. Nov. 6, 2023). The court did not reach the merits.

[9] If the Court determines that willfulness is insufficiently alleged, Plaintiff respectfully requests leave to amend the Complaint to address that issue. To the extent the Court concludes that Defendant's notice of the *Eddie Bauer* rulings applying UTPA must be pleaded to establish willfulness, Plaintiff requests leave to amend to allege that those decisions put Defendant on notice that its comparative pricing practices violate UTPA. The Court may also take judicial notice of the existence of those decisions.

6.    **Plaintiff plausibly alleges ascertainable loss and causation.**

A UTPA plaintiff must plausibly allege that, "(1) the defendant committed an unlawful trade practice; (2) plaintiff suffered an ascertainable loss of money or property; and (3) plaintiff's injury (ascertainable loss) was the result of the unlawful trade practice." *Pearson v. Philip Morris, Inc.*, 361 P.3d 3, 28 (Or. 2015).

Defendant contends ascertainable loss and causation are insufficiently alleged, but it addresses only one claimed measure of loss: the purchase price theory, which Defendant states "requires that Leyden plead deception."[10] Mot. at 22. That merely repackages Defendant's position that its conduct was not an unlawful trade practice; it does not identify any deficiency in Plaintiff's allegations of loss or causal connection. In any event, Plaintiff sufficiently alleges that Defendant's representations were deceptive and that, as a result, Plaintiff—having encountered and relied on those representations—was induced to pay money for products he otherwise would not have purchased, or to pay more than he would have in the absence of the unlawful practice. Compl. ¶¶ 42, 86–87. Whether Defendant's representations were in fact deceptive, or whether its "disclosures" were adequate, are questions of fact that cannot be resolved at this stage.

D.    **Plaintiff states a claim for intentional misrepresentation / concealment.**

"Oregon law recognizes four theories of fraud: (1) affirmative misrepresentation; (2) omission of a material fact when there is an independent duty to disclose; (3) omission of a material fact needed to make a 'half-truth' not misleading; and (4) actual or active concealment." *Martell v. GM LLC*, 492 F. Supp. 3d 1131, 1142 (D. Or. 2020). Plaintiff alleges fraud under the first and

---

[10] In addition to the purchase price inducement theory, Plaintiff alleges additional loss theories in the alternative. For example, he alleges, *inter alia*, that he paid Defendant more than he otherwise would have paid but for the unlawful conduct (Compl. ¶¶ 43, 88); and that the purchases were "illegal transactions" because the products were advertised in violation of Oregon's price-comparison statute and Attorney General regulations (*id.* ¶¶ 44, 50). Any one of Plaintiff's theories is independently sufficient to allege an ascertainable loss.

third theories—affirmative misrepresentations and omissions resulting in misleading half-truths. *See* Compl. ¶¶ 97–106.

"To state a claim for affirmative misrepresentation, Plaintiff must allege: '(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) his consequent and proximate injury.'" *RugsUSA*, 2025 U.S. Dist. LEXIS 151958, at *26 (quotation omitted). Plaintiff plausibly alleges each of these elements:

- Representation: Defendant represented that its JCF products were being sold at discounted prices. Compl. ¶¶ 3-5, 22-24, 34–35, 37, 38.

- Falsity: Defendant's pricing representations were false because the "comparable value" prices are not bona fide prices recently offered by an identified or identifiable competitor of JCF for substantially similar goods. *Id.* ¶¶ 4, 6, 23–24, 38, 46.[11]

- Materiality: Defendant's misrepresentations and nondisclosures were material, *id.* ¶¶ 3, 83, and Plaintiff would not have purchased the products, or would have paid less for them, had Plaintiff known that Defendant's pricing representations were false, *id.* ¶¶ 5, 42, 87.

- Defendant's knowledge of falsity: Defendant fabricated its "comparable value" prices and therefore knew the representations were false and was aware that consumers like Plaintiff have no choice but to rely on seller representations when making purchases. *Id.* ¶ 26.

- Intent: Defendant made the alleged pricing misrepresentations for the purpose of deceiving and inducing into purchasing products they otherwise would not have purchased, *id.* ¶ 23,

---

[11] For the reasons described, to the extent they are appropriate for the Court's consideration of the motion, Defendant's in-store placards do not negate Plaintiff's well-pled allegations of falsity.

Plaintiff relied on these misrepresentations, *id.* ¶ 42, and reasonable consumers, like Plaintiff, are more likely to buy products they believe to be discounted, *id.* ¶¶ 14, 17.

- Plaintiff's ignorance of the falsity: Defendant's fake pricing scheme is hidden by design and impossible for a typical consumer to discover, *id.* ¶ 58, and Plaintiff did not know that Defendant's price representations were false, *id*.

- Plaintiff's reliance: Plaintiff relied on Defendant's pricing misrepresentations. *Id.* ¶ 42. [12]

- Plaintiff's right to rely: Plaintiff justifiably relied on Defendant's misrepresentations because he would not have made the JCF purchases, or would have paid less for them, had he known Defendant's representations were not true. *Id.* ¶¶ 5, 42.

- Injury: Plaintiff was induced to make purchases that he otherwise would not have made based on misrepresentations, suffering injury in the full purchase price. *Id.* ¶¶ 23, 42, 87.

Plaintiff also plausibly alleges fraud based on a half-truth theory. [13] "When fraud is based on silence or nondisclosure of a material fact, a party first must 'demonstrate that the defendant either (1) remained silent when the defendant had a duty to speak, or (2) assumed the obligation to make a full and fair disclosure of the whole truth by making a representation in the nature of a 'half-truth.'" *Unigestion Holdings, S.A. v. UPM Tech., Inc.*, 580 F. Supp. 3d 932, 949 (D. Or. 2022)

---

[12] Plaintiff unequivocally alleges that he was induced to purchase multiple items from Defendant's JCF retail store based on Defendant's false and misleading "comparable value" prices, and that he relied on those price representations when deciding to purchase those items. Compl. ¶ 42. Defendant's assertion that Plaintiff fails to allege actual reliance is wrong. Mot. at 23.

[13] There is some overlap between active concealment and half-truths. *See, e.g.*, *Ivie v. Mission Rock Residential LLC*, No. 21-1122, 2022 U.S. Dist. LEXIS 122355, at *44 (D. Or. May 27, 2022) ("[A]ctive concealment with an intent to deceive may be inferred from half-truths that are 'literally true' but nevertheless 'convey a false impression' because they are 'equivocal, evasive or misleading.") (quotations omitted). Plaintiff plausibly alleges fraud based on Defendant's half-truths regardless of whether it is a standalone theory or a form of active concealment.

(quotation omitted). To the extent that Defendant's prices are based on anything other than complete fabrications, Defendant fails to identify the basis of those prices. Compl. ¶¶ 26, 50. Defendant assumed the obligation to make a full and fair disclosure of the whole truth—the basis for its "comparable value" prices—by making half-truth representations that led Plaintiff and reasonable consumers to believe that the prices are actual former prices or actual prices for similar products.

### E.    Plaintiff states a claim for unjust enrichment.

Plaintiff states a claim for unjust enrichment in the alternative. Defendant's contention that Plaintiff failed to utter the talismanic words "in the alternative to Plaintiff's legal claims" elevates form over substance. Mot. at 26.

Federal Rule of Civil Procedure 8(d)(2) expressly provides that a "party may set out two or more statements of a claim or defense alternatively or hypothetically," and that a pleading is "sufficient if any one of them is sufficient." Fed. R. Civ. P. 8(d)(2). To the extent a plaintiff is barred from obtaining equitable relief once an adequate legal remedy has been proven, that principle governs proof, not pleading. *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) (plaintiff "must establish that she lacks an adequate remedy at law before securing equitable restitution").

Read in context, the Complaint satisfies these principles. It alleges that the "contracts with Plaintiff are void or voidable," and that Plaintiff seeks "restitution and, in the alternative, rescission." Compl. ¶¶ 111–12. That is textbook alternative pleading. Plaintiff thus pleads that the statutory remedy may be inadequate and that restitution or rescission are available in the alternative. Nothing more is required at this stage.

Defendant next argues that Plaintiff's unjust enrichment claim fails because Plaintiff "received exactly what he purchased." Mot. at 26. That argument misreads the Complaint and

misperceives the doctrine. Plaintiff alleges that Defendant's pervasive "comparable value" scheme induced purchases in violation of the UTPA and Oregon's Price Comparison Advertising Law, allowed Defendant to charge inflated prices and obtain a monetary benefit it would not otherwise have received, and that Defendant knew of the scheme. These allegations satisfy the three elements of unjust enrichment under Oregon law: (1) a benefit conferred; (2) awareness of that benefit; and (3) the inequity of allowing Defendant to retain it. *Wilson v. Gutierrez*, 323 P.3d 974, 978 (Or. Ct. App. 2014). Notably, this Court held in *RugsUSA* that unjust enrichment is available to a plaintiff who adequately alleges intentional misrepresentation stemming from "fake sale" allegations. *RugsUSA*, 2025 U.S. Dist. LEXIS 151958, at *29.

Plaintiff has therefore adequately pled unjust enrichment in the alternative. In the event the Court finds the Complaint ambiguous, Plaintiff seeks leave to amend to expressly allege that he lacks an adequate remedy at law and that the claim is brought in the alternative.

## IV.    CONCLUSION

The Court should deny Defendant's motion in its entirety. Alternatively, Plaintiff respectfully requests leave to amend the Complaint to cure any deficiencies identified by the Court. *See, e.g.*, *Morrow Equip. Co., LLC v. Stonebridge, Inc.*, 613 F. Supp. 3d 1355, 1356 (D. Or. 2020) ("[L]eave to amend should be granted unless the court 'determines that the pleading could not possibly be cured by the allegation of other facts.'") (quotation omitted).

Dated: November 20, 2025                    Respectfully submitted,


                                            */s/ Ryan Casey*
                                            M. Ryan Casey, OSB # 152824
                                            THE CASEY LAW FIRM, LLC
                                            PO Box 2301-417
                                            Silverthorne, CO 80498
                                            Email: ryan@rcaseylaw.com

                                            Gillian Wade (*pro hac vice*)
                                            WADE KILPELA SLADE LLP
                                            2450 Colorado Avenue, Suite 100E
                                            Santa Monica, CA 90404
                                            Tel: (310) 667-7273
                                            Fax: (424) 276-0473
                                            Email: gwade@waykayslay.com

                                            Edwin J. Kilpela, Jr. (*pro hac vice*)
                                            WADE KILPELA SLADE LLP
                                            6425 Living Place, Suite 200
                                            Pittsburgh, PA 15206
                                            Phone: (412) 314-0515
                                            Email: ek@waykayslay.com

                                            Evan E. North (*pro hac vice*)
                                            NORTH LAW PLLC
                                            1900 Market Street, Suite 800
                                            Philadelphia, PA 19103
                                            Phone: (202) 921-1651
                                            Email: evan@northlawpllc.com

                                            *Attorneys for Plaintiff and the Proposed Class*

Plaintiff's Opposition to
Defendant's Motion to Dismiss