# EXHIBIT A

BEFORE THE ATTORNEY GENERAL

OF THE STATE OF OREGON

| | |
|---|---|
| In the Matter of: ) | ORDER ADOPTING RULES 20-010, 20-015 and 20-030 |
| ) | |
| The Adoption of Rules 20-010, ) | PURSUANT TO THE UNLAWFUL |
| 20-015, 20-020, 20-025 and ) | TRADE PRACTICES ACT |
| 20-030 Related to Unlawful ) | |
| Trade Practices | |

     On December 1, 1975, the Attorney General gave notice in the Oregon Administrative Rules Bulletin, and to all persons on the mailing list of his Consumer Protection Division, of the proposed adoption of five rules defining certain conduct to be unfair in trade or commerce, pursuant to ORS 646.608(1)(s) and (4).  Hearings on the proposed rules were held in Portland, Oregon on December 17 and December 19 of 1975.  Because of the far-reaching effect of the proposed rules, and at the request of several interested persons, the Attorney General decided to hold further hearings.  Therefore, pursuant to further notice, public hearings were again held in Portland, Oregon on February 11, 1976 to receive additional testimony.

     During the course of these hearings, extensive and constructive testimony was received on each of the five proposals, from diverse sources.  Testimony was received from individual businesses, from business trade associations, from consumer groups and from governmental agencies.

     From this testimony it became apparent that two of the proposed rules -- Rule 20-020 and 20-025 -- should not be adopted, and that changes should be made in each of the remaining three rules.

Because substantial revisions to Proposed Rules 20-010, 20-015 and 20-030 were made in light of the testimony received in December and February, I concluded that interested persons should have another opportunity to make comments. Therefore, a third duly noticed hearing was held in Portland on June 2, 1976.

After carefully considering all of the testimony received in this proceeding, I am now prepared to adopt final rules dealing with the subjects of misleading price representation, improper "free" offers, and the practice of "updating" motor vehicles. These rules, as adopted, are attached hereto. Except as to catalogues, Rules 20-010, 20-015 and 20-030 will be effective September 1, 1976. Rule 20-010 will apply to catalogues distributed in Oregon after January 1, 1977.

Given the high degree of public interest in this proceeding, an explanation is in order of the rationale employed to reach the final form of each rule:

(a) <u>Rule 20-010 (Misleading Price Representations)</u> Proposed Rule 20-010 was intended to provide a precise standard interpreting a portion of ORS 646.608(1)(j), prohibiting misrepresentations regarding the reasons for, existence of, or amounts of price reductions. Assurances of voluntary compliance had been taken from various businesses, who then complained that competitors were not being prosecuted similarly. Furthermore, complaints were received by the Consumer Protection Division from retailers regarding competitors acting in violation of the above-quoted statute.

As originally proposed, Rule 20-010 had separate proscriptions for retailers and manufactures/distributors. As to retailers, the proposed rule would have severely restricted

price comparisons, considering only three types to be legitimate. Manufacturers/distributors would have been prohibited from advertising "manufacturer's suggested list price" or the like.

In terms of both volume and depth of analysis, proposed Rule 20-010 received the most comment. Major and minor retailers, trade groups, advertising firms, consumer groups and state agencies all criticized various aspects of the proposal. Based on that testimony, I have concluded that it would be inappropriate to adopt Section 4(b) of proposed Rule 20-010. A variety of problems are posed by attempting to prohibit manufacturers, particularly those engaged in interstate commerce, from advertising a suggested list price for their product. Moreover, given its source this information can be of value to the consumer, permitting general comparisons of the price of competing products.

At the retail level, I have concluded that a rule on misleading price representations is definitely in order. Reflecting a great deal of very useful testimony, revisions to the proposed rule are necessary. For example, catalogue sellers pointed out a unique problem. It is useful to consumers to see comparative price advertising in catalogues. However, none of the permissible price comparisons proposed would have been available to a catalogue seller. Therefore, a revision has been made which accommodates the needs of that industry, while affording adequate disclosure of the limitations inherent in catalogue price comparisons.

Secondly, permitting price comparisons only to an immediately preceding price, or a contemporaneous price of a competitor is too narrow. Some products, such as snow skis, snowmobiles, water

skis and others, have seasonal markets. Therefore, the rule has been revised to permit seasonal price comparisons, with adequate disclosure of the time periods involved.

A separate problem relates to price reductions employed by major chains to meet localized competition in their various service territories. This problem has also been accommodated by a revision to the rules. Further revisions reflect a broadening of permissible price comparisons to situations where legitimate offers of goods were made but no actual sales accomplished, and to accommodate situations where sticker prices are required by state or federal law. Finally, a subsection was added to permit general price reduction representations, without identifying either the reference price or offering price specifically to cover "close-out" situations.

Some witnesses recommended that the existing or proposed Federal Trade Commission "guidelines" on this subject (see 16 CFR 233) be adopted in lieu of my proposals. Unfortunately, these "guidelines" do not have the full force and effect of law. Moreover, in my opinion the guidelines are not satisfactory for either the consuming public, or the business community, because they are too general and contain too many vague terms.

In addition to their criticisms of the proposed rule, retailers in particular provided constructive alternative language. Principal among these were alternative rules presented by Fred Meyer, Inc. and by the Oregon Retail Council. The latter proposal was subscribed to by several other individual businesses and organizations.

The rule as adopted reflects a blending of the original proposals with these constructive alternatives. Basically, it defines certain price comparisons as <u>prima facie</u> legitimate. As a "catch-all," any other price comparison is permitted if it can be substantiated. This allows sufficient flexibility to the marketplace, while at the same time protecting the consumer from potential abuses.

(b) <u>Rule 20-015 (Misleading "Free Offers)</u>

The proposed rule would have prohibited offering "free" items in any situation where other goods or services had to be purchased, or where a "sales pitch" for other goods or services was involved. Philosophically, it is undoubtedly true that little, if anything, is free in this world. However, the hearing record establishes conclusively that there are many "free" promotions which are not deceptive and which are, in fact, beneficial to consumers. For example, national manufacturers ship a variety of products into Oregon whereby the consumer gets an associated item "free" when purchasing another item.

Various witnesses suggested that I adopt the Federal Trade Commission Guidelines on "free" offers. See 16 CFR 251. Instead, Rule 20-015 has been revised to prohibit the making of a free offer in three defined situations -- where the price, quality or quantity of the underlying product is arrived at by bargaining, where the price of the underlying product has been increased over its regular price prior to the promotion, and in the "sales Pitch" situation, absent conspicuous disclosure of all conditions.

Many objections were voiced to the prohibition of "free offers" in the negotiated price situation, particularly by automobile dealers. However, it is interesting to note that the rule adopted is consistent with the FTC guideline on the subject which has been in effect since December of 1971. (See 16 CFR 251)

(c) <u>Rule 20-020 (Limited Time Offerings)</u>

As noted above, I have decided not to adopt a rule on this subject at this time.

(d) <u>Rule 20-025 (Failure to Deliver an Odometer Statement)</u>

This rule was proposed in order to give consumers information of the extent to which a purportedly new vehicle had in fact been used, and was considered a compromise over attempting to draft a definition of the term "used." The proposal was prompted by a rather narrow Circuit Court interpretation of ORS 646.608(1)(f). However, the need for such a rule at the present time is questionable. Further research has demonstrated that regulations of the National Highway Traffic Safety Administration require the delivery of an odometer disclosure statement "prior to the first sale of the vehicle for purposes of resale." Moreover, in the January 6, 1976 issue of the Federal Register, the Federal Trade Commission announced the proposed adoption of rules governing disclosures to be made in the sale of used motor vehicles. The proposed rules define "used motor vehicle" in a sensible manner, which should afford a meaningful standard to the courts in interpreting ORS 646.608(1)(f). Given these developments, it would probably constitute regulatory overkill for the State of Oregon to attempt to adopt a rule dealing with this subject, and none will be adopted at this time.

(e)  Rule 20-030 (Updating)

The proposed rule was designed to afford consumers information regarding the year of manufacture of those motor vehicles which do not undergo major changes in body stule annually.  It is important to know, for example, whether a mobile home offered for sale as a 1976 model was actually made in 1974 or early 1975 and has been sitting on a dealer's lot, exposed to the elements, for a substantial period of time.  FTC guidelines on this subject (16 CFR 14.1) while requiring manufacturers to affix a disclosure to a vehicle, do not extend to disclosures at the retail level.

Based on the testimony, the rule has been modified to exclude private automobiles and motorcycles, and to cover motor vehicle chassis as well as the completed motor vehicle.

Based upon the foregoing, it is
ORDERED, that Rules 20-010, 20-015 and 20-030, in the form attached hereto and by this reference incorporated herein, are adopted by the Attorney General pursuant to ORS 646.608(1)(s) and (4) and except as to catalogues shall be effective September 1, 1976; Rule 20-010 shall apply to catalogues distributed in Oregon after January 1, 1977; and it is further
ORDERED, that Proposed Rules 20-020 and 20-025 are hereby withdrawn and not adopted.

Salem, Oregon
July 20, 1976

LEE JOHNSON
Attorney General

By _____
JAMES W. DURHAM
The Deputy Attorney General