IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SEAN LEYDEN, individually and on
behalf of all others similarly situated,

        Plaintiff,

   v.

J. CREW GROUP, LLC, a Delaware
limited liability company,

        Defendant.

Case No. 3:25-cv-01448-AB

OPINION & ORDER

M. Ryan Casey
The Casey Law Firm, LLC
358 Blue River Pkwy Unit E-417
Silverthorne, CO 80498

Edwin John Kilpela, Jr.
Wade Kilpela Slade LLP
6425 Living Place Suite 200
Pittsburgh, PA 15206

1 – OPINION & ORDER

Evan E. North
North Law PLLC
1900 Market Street Suite 800
Philadelphia, PA 19103

Gillian Leigh Wade
Wade Kilpela Slade LLP
2450 Colorado Avenue Suite 100e
Santa Monica, CA 90404

      Attorneys for Plaintiff

David S. Watnick
Sarah J. Crooks
Kayla Lindgren
Perkins Coie, LLP
1120 NW Couch Street 10th Floor
Portland, OR 97209-4128

      Attorneys for Defendant

**BAGGIO, District Judge:**

Plaintiff Sean Leyden brings this case against Defendant J. Crew Group, LLC individually and on behalf of all others similarly situated. Plaintiff asserts three claims for relief: (1) violation of the Oregon Unlawful Trade Practices Act ("UTPA"); (2) fraud, through intentional misrepresentation and concealment; and (3) unjust enrichment. Compl. ¶¶ 66–112, ECF No. 1. Defendant moves to dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(6). Def.'s Mot. Dismiss ("Def.'s Mot.") 1, ECF No. 11. For the following reasons, the Court grants in part and denies in part Defendant's Motion.

## BACKGROUND

On June 7, 2025, Plaintiff visited the J. Crew Factory ("JCF") retail store at Cascade Station in Portland, Oregon to purchase clothing. Compl. ¶ 41. Plaintiff purchased a "short-sleeve linen-blend shirt" for $39.20, a "performance jersey hoodie" for $62.65, a "leather dress belt" for $29.75, "flex chino shorts" for $34.75, a "long-sleeve plaid casual shirt" for $44.75, and

2 – OPINION & ORDER

a "short-sleeve gauze shirt" for $34.95. *Id.* ¶¶ 37(a)–(f). Each article of clothing Plaintiff purchased was discounted from a reference price. *Id.* For example, the "short-sleeve linen-blend shirt" was "discounted from a . . . $98 reference price." *Id.* ¶ 37(a). And the "performance jersey hoodie" was "discounted from a . . . $89.50 reference price." *Id.* ¶ 37(b); *see also id.* ¶¶ 37(c)–(f) (listing the remaining reference prices). Defendant derived its reference prices from products of "comparable value." *Id.* ¶ 23. Plaintiff thus believed that when he purchased the clothing items, he was paying less than their value and what they sell for in the retail marketplace. *Id.* ¶ 42. Plaintiff relied on the reference prices in deciding to purchase the clothing items and would not have purchased them—or paid near as much—had he known Defendant's representations were false. *Id.* As a result, Plaintiff believed he saved over $300 on his purchases, as shown on his receipt. *Id.* ¶ 45.

Plaintiff alleges, however, that Defendant's comparable value reference prices were false. *Id.* ¶ 46. Specifically, Plaintiff alleges that Defendant's reference prices were "purely fictitious benchmarks . . . not tied to the actual prevailing market prices of JCF products or products of comparable quality." *Id.* ¶ 3. Plaintiff instead alleges that the reference prices were "more consistent with main-line [J. Crew ("JC")] product prices and the prices of similar products offered by *JC's* direct competitors, as opposed to *JCF's* competitors."[1] *Id.* Thus, Plaintiff alleges he was defrauded because he was led to believe that he was getting a better deal than he truly was. *Id.* ¶ 47. Plaintiff further alleges he suffered an ascertainable loss of money by purchasing clothing items he would not have purchased had he known the reference prices were false, by

---

[1] Although "JC and JCF offer similar styles of clothing and accessories, . . . JC clothing is of a higher price and quality (e.g., material, stitching, construction, etc.) than JCF clothing." Compl. ¶ 2. Moreover, JC and JCF do not compete with each other; "JCF products are made exclusively for JCF stores – they are not leftover or overstock items from the main JC product line." *Id.*

3 – OPINION & ORDER

"not receiving the benefit of the bargain[,]" by paying an "inflated price[,]" and by expending funds as part of an illegal transaction. *Id.* ¶¶ 42, 48.

Generally, Plaintiff alleges that Defendant has been engaged in this "pervasive marketing scheme" for years. *Id.* ¶ 22. Specifically, Plaintiff alleges that Defendant has been artificially inflating its prices but marking them down as discounted relative to a comparable value reference price, with the goal of tricking customers into thinking they are getting a deal. *Id.* ¶¶ 22–23. Such a scheme is effective because customers are more likely to purchase products on sale as opposed to at regular price. *Id.* ¶ 14. Therefore, "[b]y offering a never-ending parade of limited-time promotional offers, Defendant leads reasonable consumers to believe they are getting a better deal on JCF products than they truly are." *Id.* ¶ 25. Plaintiff summarizes Defendant's alleged scheme:

> (1) [E]ach JCF product features an inflated "comparable value" reference price; (2) the consumer has no way of determining the origin or basis for the "comparable value" price, how it was chosen or calculated, or the identity of any competitor selling the product at the reference price; (3) the products are consistently offered at some substantial discount to the "comparable value" price, whether by way of a limited-time storewide promotion, a promotion that applies to particular categories of products (e.g., sweaters or outerwear), or simply a lower price for a particular item that appears to reflect a discount off the reference price; and (4) while the terms of the applicable promotions change frequently, the "comparable value" price is rarely, if ever, the applicable price for any JCF products.

*Id.* ¶ 24.

Plaintiff's allegations stem from two investigations. First, Plaintiff investigated similar clothing items to that purchased by Plaintiff which were being sold by JCF's competitors in the area—specifically a Gap Factory in Troutdale, Oregon, and a Banana Republic Factory and Old Navy in Cascade Station. *Id.* ¶¶ 36–37. Plaintiff's investigation yielded data showing that JCF's comparable value reference prices all exceeded the actual prices of similar clothing items sold by these competitor stores. *See id.* ¶¶ 37(a)–(f).

4 – OPINION & ORDER

For example, with respect to the "short-sleeve linen-blend shirt"—which Plaintiff purchased from JCF for $39.20, discounted from a purported $98 reference price—similar linen-blend shirts were sold at Gap Factory for $20 to $40, at Banana Republic Factory for $30 to $50, and at Old Navy for $19.50 to $32. *Id.* ¶ 37(a). Similarly, with respect to the "performance jersey hoodie"—which Plaintiff purchased from JCF for $62.65, discounted from a purported $89.50 reference price—similar hoodies were sold at Gap Factory for $20 to $42 and at Old Navy for $35 to $60. *Id.* ¶ 37(b). And with respect to the "leather dress belt"—which Plaintiff purchased from JCF for $29.75, discounted from a purported $59.50 reference price—similar belts were sold at Gap Factory for $15 to $18, at Banana Republic Factory for $39 to $42, and at Old Navy for $10 to $23. *Id.* ¶ 37(c). Plaintiff performed a similar comparison for his remaining clothing purchases: the "flex chino shorts[,]" *id.* ¶ 37(d), the "long-sleeve plaid casual shirt[,]" *id.* ¶ 37(e), and the "short-sleeve gauze shirt[,]" *id.* ¶ 37(f). Consistent with allegations regarding Plaintiff's first investigation, Plaintiff alleges that JCF's comparable value reference prices—with respect to Plaintiff's clothing purchases—exceed the actual prices of similar clothing items sold at nearby competitor retail outlets. *Id.* ¶ 30

Plaintiff's second investigation compared JCF's comparable value reference prices with similar looking, but dissimilar quality products sold by JC. *See id.* ¶¶ 34–35. Plaintiff's investigation yielded data showing that JCF's reference prices—for two JCF clothing items purchased by Plaintiff—were the same or almost the same as similar-looking yet higher-quality clothing items sold at JC. *See id.* Specifically, Plaintiff found a similar looking "short-sleeve linen-blend shirt[,]" which Plaintiff purchased from JCF as discounted from a purported reference price of $98, being sold at JC for $98. *Id.* ¶ 34. JC's shirt, however, was made with 100% premium quality linen, while JCF's shirt was not. *Id.* In addition, Plaintiff found a similar

5 – OPINION & ORDER

looking "performance jersey hoodie[,]" which Plaintiff purchased from JCF as discounted from a purported reference price of $89.50, being sold at JC for $89.99. *Id.* ¶ 35. JC's hoodie, however, was made from 83% cotton, while JCF's hoodie was mostly made from polyester. *Id.* Consistent with allegations regarding Plaintiff's second investigation, Plaintiff alleges that JCF's comparable value reference prices for at least two clothing items Plaintiff purchased are the same or almost the same price as similar-looking but higher-quality items sold at JC. *See id.* ¶ 29.

In light of these investigations, Plaintiff alleges that Defendant's comparable value reference prices "are not tied to the actual prevailing market prices of JCF products or products of comparable quality" but are instead more consistent with main-line JC products—products that are similar looking but are of a higher quality. *Id.* ¶ 3. Plaintiff alleges that "Defendant perpetrates this . . . scheme to create the illusion of savings to drive increased sales." *Id.* ¶ 4. Plaintiff further alleges that Defendant perpetrates this scheme to "artificially inflate" its prices, and has done so for years. *Id.* ¶ 22.

As a result, Plaintiff brings claims for unlawful trade practices under the UTPA, fraud, and unjust enrichment. *Id.* ¶ 6. Plaintiff purports to represent a putative class of JCF customers who have purchased products from any of JCF's Oregon locations which were discounted from a comparable value reference price. *Id.* ¶ 57.

**STANDARDS**

**I.      Rule 12(b)(6)**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When evaluating the sufficiency of a complaint's factual allegations, the court must accept all material facts alleged in

the complaint as true and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In other words, a complaint must state a plausible claim for relief and contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct . . . ." *Id*. at 679. A motion to dismiss under Rule 12(b)(6) will be granted if a plaintiff alleges the "grounds" of his "entitlement to relief" with nothing "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## II.    Rule 9(b)

Under Federal Rule of Civil Procedure 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). The allegations "must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (quoting *Bly–Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)).

///

///

7 – OPINION & ORDER

## DISCUSSION

Defendant moves to dismiss Plaintiff's Complaint for failure to state a claim. Def.'s Mot. 1. Specifically, Defendant argues that Plaintiff's Complaint fails under Rule 9(b)'s heightened pleading standard, *id.* at 9–13, and that Plaintiff does not plausibly allege violations of the UTPA, fraud, or unjust enrichment, *id.* at 13–27. The Court agrees in part and disagrees in part. The Court finds that Plaintiff's Complaint satisfies Rule 9(b)'s heightened pleading standard and that Plaintiff plausibly alleges some violations of the UTPA, fraud, and unjust enrichment. Accordingly, the Court grants in part and denies in part Defendant's Motion.

## I.    Incorporation by Reference

As a threshold matter, Defendant requests that the Court consider in-store placards that have been posted at the checkout counter and in fitting rooms at Defendant's Cascade Station location since at least May 2024. Def.'s Mot. 8–9; Def.'s Reply 2–5, ECF No. 27. These placards relate to the origin of Defendant's comparable value reference prices. *See* Mehr Decl. ¶¶ 3–4, ECF No. 12; Mehr Decl. Ex. A, ECF No. 12-1 (photo of placard at checkout counter); Mehr Decl. Ex. B, ECF No. 12-2 (photo of placard in fitting room area). Plaintiff opposes incorporation by reference, arguing that Plaintiff does not refer to or rely on the placards, and the placards do not form the basis of any claim. Pl.'s Resp. Def.'s Mot. ("Pl.'s Resp.") 8–10, ECF No. 22. The Court agrees with Defendant and finds that incorporation by reference of the placards is appropriate.

When ruling on a Rule 12(b)(6) motion, a court may consider certain documents that are not attached to the complaint as part of the pleading "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *see also Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002

8 – OPINION & ORDER

(9th Cir. 2018) ("[I]ncorporation-by-reference . . . treats certain documents as though they are part of the complaint itself."). This doctrine "prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Khoja*, 899 F.3d at 1002. A court, however, may not consider documents which merely support a defense; "[o]therwise, defendants could use the doctrine to insert their own version of events into the complaint to defeat otherwise cognizable claims." *Id.*

Here, the Court finds that incorporation-by-reference of Defendant's in-store placards is proper because the policy outlined in the placards "forms the basis of [Plaintiff's] claim[s]." *Ritchie*, 342 F.3d at 908. Indeed, Plaintiff's Complaint is largely based on Defendant's alleged failure to disclose the methodology behind its comparable value reference prices. *See* Compl. ¶¶ 22–23. The Court thus finds it proper to consider documents at the motion to dismiss stage which illuminate Defendant's methodology, even if not referenced or relied on in the Complaint, because Plaintiff's claims necessarily depend on such material.[2] *See* Compl. ¶ 75 ("Defendant operated a systematic and pervasive unlawful price comparison policy. This scheme deceived, and continue to deceive, reasonable consumers into believing they are receiving substantial discounts off a fictitious 'comparable value' price."); *see, e.g.*, *Gershfeld v. TeamViewer US, Inc.*, No. 21-55753, 2023 WL 334015, at *1 (9th Cir. Jan. 20, 2023) (affirming the district court's incorporation of documents that were not included with or attached to the complaint because the plaintiff's claims necessarily relied on such documents).

---

[2] The Court notes that "whether a document can ever form the basis of the plaintiff's claim if the complaint does not mention the document at all" is "[a] more difficult question . . . ." *Khoja*, 899 F.3d at 1002 (citation modified). But if the claim "necessarily depend[s]" on those documents, incorporation by reference is proper. *See id.* (citing *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005)). Here, because Plaintiff's claims necessarily depend on the content of Defendant's in-store placards, the Court finds that incorporation by reference is proper.

9 – OPINION & ORDER

Accordingly, the Court considers Defendant's in-store placards as though they are part of Plaintiff's Complaint. These placards provide in relevant part:

> [Defendant's] Comparable Value (or Comp. Value) prices are determined by our in-house merchandising team and based on prices at which similar merchandise has been offered for sale either by J. Crew or other retailers or websites. As market prices often fluctuate, we encourage you to do your own comparison shopping to see what great value we offer.

Mehr Decl. Exs. A–B.

## II.    Rule 9(b)

Defendant next argues that Plaintiff's Complaint fails to meet Rule 9(b)'s heightened pleading standard because it is primarily based on information and belief and undefined investigations. Def.'s Mot. 10–11. Plaintiff responds that his allegations are sufficient. Pl.'s Resp. 10–15. The Court agrees with Plaintiff.[3]

As stated, under Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This means alleging "the who, what, when, where, and how of the misconduct charged." *Vess*, 317 F.3d at 1106 (internal quotation marks omitted). Here, the Court finds that Plaintiff alleges each factor. First, Plaintiff alleges the who—Defendant J. Crew Group, LLC, specifically JCF. Compl. ¶ 2. Second, Plaintiff alleges the what: Defendant engages in a marketing scheme in which it offers products discounted from fictitious comparable value reference prices that are not tied to prevailing market prices or products of comparable quality. *Id.* ¶ 3. Third, Plaintiff alleges the when: Defendant has been engaged in this marketing scheme since at least June 7, 2025, with the exact length of time to be determined in discovery. *Id.* ¶¶ 41, 58. Fourth, Plaintiff alleges the

---

[3] Because Plaintiff does not dispute that Rule 9(b)'s heightened pleading standard applies, *see* Pl.'s Resp. 10–15, the Court does not address this issue.

10 – OPINION & ORDER

where—Defendant's Oregon-based JCF stores. *Id.* ¶ 6. Lastly, Plaintiff alleges the how, in four parts:

> (1) [E]ach JCF product features an inflated "comparable value" reference price; (2) the consumer has no way of determining the origin or basis for the "comparable value" price, how it was chosen or calculated, or the identity of any competitor selling the product at the reference price; (3) the products are consistently offered at some substantial discount to the "comparable value" price, whether by way of a limited-time storewide promotion, a promotion that applies to particular categories of products (e.g., sweaters or outerwear), or simply a lower price for a particular item that appears to reflect a discount off the reference price; and (4) while the terms of the applicable promotions change frequently, the "comparable value" price is rarely, if ever, the applicable price for any JCF products.

*Id.* ¶ 24.

In addition to alleging the who, what, when, where, and how of Defendant's alleged misconduct, Plaintiff alleges findings from two investigations: one comparing Defendant's comparable value reference prices from Plaintiff's purchases to the offer prices of similar clothing items selling at retail competitors in the area, *id.* ¶¶ 37(a)–(f), and one comparing Defendant's comparable value reference prices from two of Plaintiff's purchases to similar-looking products selling at JC, *id.* ¶¶ 34–35. Plaintiff asserts that the findings from these investigations demonstrate that Defendant's comparable value reference prices "exceed the prices at which similar merchandise is being offered by representative retail outlets in the area[,]" *id.* ¶ 36, and are instead "more consistent with main-line JC product prices and the prices of similar products offered by *JC's* direct competitors," *id.* ¶ 29. Defendant, however, argues that Plaintiff's investigations are unhelpful because they lack details about their "scope, duration, or methodology." Def.'s Mot. 10; *see also id.* at 11 ("Counsel did not track prices over time, investigate whether [Defendant] ever offered the products at the listed comparable values, or visit any [Defendant] store.").

11 – OPINION & ORDER

The Court finds *Jacobo v. Ross Stores, Inc.*, No. CV-15-04701-MWF-AGR, 2016 WL 3482041 (C.D. Cal. Feb. 23, 2016), persuasive. There, like Plaintiff here, the plaintiffs alleged that the defendant's comparable value prices were "higher than those advertised by other merchants for identical products." *Id.* at *3. The plaintiffs, however, alleged this based exclusively on information and belief. *Id.* The plaintiffs did not investigate their claims or plead any facts to bolster their belief. *Id.* The district court found this fatal to the plaintiffs' complaint and dismissed it with leave to amend. *Id.* at *5. The court reasoned that the plaintiffs should have either pleaded that (1) the items they purchased from the defendant were sold at other stores in the area for prices lower than the defendant's comparable value prices, using specific facts showing exact prices, or (2) identical items could not be found at other stores. *Id.*

Here, unlike the plaintiffs in *Jacobo*, Plaintiff pleads specific facts showing the exact prices of items sold by other retail stores in the area. *See* Compl. ¶¶ 37(a)–(f). Specifically, Plaintiff pleads the prices of items sold at a Gap Factory in nearby Troutdale, Oregon, and at a Banana Republic Factory and Old Navy within Cascade Station. *Id.* ¶ 37. Plaintiff's allegations demonstrate that for each clothing item Plaintiff purchased, its associated comparable value reference price exceeds the prices of like items sold at nearby retail competitors. *Id.* ¶¶ 37(a)–(f). The Court finds that this is exactly the type of information missing in *Jacobo*. *See* 2016 WL 3482041, at *3 ("Plaintiffs could allege, for instance, that the items they purchased bore a 'Compare At' price of $X but were sold at other retailers for a lower price of $Y."). Accordingly, the Court finds that this information, combined with Plaintiff's allegations of the who, what, when, where, how, and why of Defendant's alleged misconduct, is sufficient to satisfy Rule 9(b)'s heightened pleading standard.

///

12 – OPINION & ORDER

### III.    UTPA

Oregon's UTPA "was enacted as a comprehensive statute for the protection of consumers from unlawful trade practices." *Pearson v. Philip Morris, Inc.*, 358 Or. 88, 115, 361 P.3d 3 (2015). ORS 646.638 provides for a private right of action. ORS 646.638(1). To establish a claim under ORS 646.638, a plaintiff "must prove that (1) the defendant committed an unlawful trade practice enumerated in ORS 646.608; (2) the plaintiff suffered an ascertainable loss of money or property; and (3) the plaintiff's loss was caused by the defendant's unlawful trade practice." *Bohr v. Tillamook Cnty. Creamery Ass'n*, 373 Or. 343, 348–49, 567 P.3d 413 (2025). A defendant's commission of an unlawful trade practice must be willful. *Id.* at 348.

Here, Defendant moves to dismiss Plaintiff's UTPA claim because Plaintiff does not plausibly allege an unlawful trade practice under ORS 646.608, willfulness, an ascertainable loss, or causation. Def.'s Mot. 14–22. The Court finds Plaintiff plausibly alleges unlawful trade practices under ORS 646.608(1)(ee), ORS 646.608(1)(j), and ORS 646.608(1)(u). The Court further finds Plaintiff plausibly alleges willfulness, an ascertainable loss, and causation.

#### A.    Unlawful Trade Practice

A person engages in an unlawful trade practice if they perform any of the acts under ORS 646.608(1). Here, Plaintiff alleges Defendant committed unlawful trade practices under ORS 646.608(1)(ee), ORS 646.608(1)(j), ORS 646.608(1)(u), ORS 646.608(1)(s), ORS 646.608(1)(i), and ORS 646.608(1)(e). Compl. ¶¶ 74–79. The Court addresses each alleged violation in turn.

##### i.    ORS 646.608(1)(ee)

Under ORS 646.608(1)(ee), a person engages in an unlawful trade practice if they violate ORS 646.883 or ORS 646.885. Here, Plaintiff alleges Defendant violated ORS 646.883(1), ORS 646.883(2), and ORS 646.885. Compl. ¶ 74; *see also* Pl.'s Resp. 15–16.

13 – OPINION & ORDER

a.    ORS 646.883(1)

Under ORS 646.883(1), it is "unlawful for a seller to include a price comparison in an advertisement unless . . . [t]he seller clearly and conspicuously identifies in the advertisement the *origin* of the price that the seller is comparing to the seller's current price[, which] includes but is not limited to the seller's former selling price, a manufacturer's list price or a competitor's price for the same real estate, goods or services." (emphasis added).

Plaintiff argues Defendant violates this provision because Defendant does not identify the origin of its comparable value reference prices. Pl.'s Resp. 16–18; *see also* Compl. ¶ 74. Defendant argues that its in-store placards sufficiently identify the origin of its comparable value reference prices. Def.'s Reply 7–8. The Court agrees with Plaintiff.

Defendant's in-store placards provide that Defendant's comparable value reference prices "are determined by our in-house merchandising team and based on prices at which similar merchandise has been offered for sale either by [Defendant] or other retailers or websites." Mehr Decl. Exs. A–B. But as Plaintiff identifies, ORS 646.883(1) requires more. *See* Pl.'s Resp. 18 (describing Defendant's placards as "self-referential" and "unverifiable"). Defendant must identify whether the origin of the price is "the seller's former selling price, a manufacturer's list price or a competitor's price . . . ." ORS 646.883(1). Defendant cannot rely on "opaque" references like it does here. *Clark v. Eddie Bauer LLC*, No. C20-1106-JCC, 2021 WL 1222521, at *3 (W.D. Wash. Apr. 1, 2021), *aff'd in part, rev'd in part and remanded*, No. 21-35334, 2024 WL 177755 (9th Cir. Jan. 17, 2024). Accordingly, the Court finds that Plaintiff plausibly alleges an unlawful trade practice under ORS 646.608(1)(ee), specifically ORS 646.883(1).[4] *See Clark*

---

[4] Because the Court finds that Defendant's in-store placards do not comply with ORS 646.883(1), the Court need not resolve whether Defendant's individual price tags and placards

14 – OPINION & ORDER

*v. Eddie Bauer LLC*, 770 F. Supp. 3d 1271, 1278 (W.D. Wash. 2025) ("[W]ithout identifying the comparable item, a consumer has no way of knowing if the price comparison is legitimate or a falsely inflated reference price." (internal quotation marks omitted)).

> b.    ORS 646.883(2)

Under ORS 646.883(2), it is "unlawful for a seller to include a price comparison in an advertisement unless . . . [t]he price comparison is in compliance with ORS 646.608(1)(j) and the rules adopted under ORS 646.608(4) and compliance is established based on facts provable by the seller."

ORS 646.608(1)(j) in turn provides that a person engages in an unlawful trade practice if they make "false or misleading representations of fact concerning the reasons for, existence of, or amounts of price reductions." And ORS 646.608(4) provides that "[a]n action or suit may not be brought under subsection (1)(u)[5] of this section unless the Attorney General has first established a rule in accordance with the provisions of ORS chapter 183 declaring the conduct to be unfair or deceptive in trade or commerce." Here, the relevant rule is Oregon Administrative Rule ("OAR") 137-020-0010(6), which prohibits representing goods for sale at an offering price less than a reference price unless the reference price meets one of the enumerated exceptions.

Plaintiff argues Defendant violates these provisions because Defendant's comparable value reference prices "are neither tied to actual competitors nor grounded in real offers for similar goods within the Oregon market . . . ." Pl.'s Resp. 20. Instead, Plaintiff argues that Defendant's comparable value reference prices are closer to statements of opinion. *Id.* Defendant

---

are distinct advertisements for purposes of ORS 646.883(1). *See* Pl.'s Resp. 16; Def.'s Reply 7–8.

[5] Subsection (1)(u) provides that a person engages in an unlawful trade practice if they engage "in any other unfair or deceptive conduct in trade or commerce." ORS 646.608(1)(u).

15 – OPINION & ORDER

argues it complies with these provisions and that Plaintiff does not plausibly allege the comparable value reference prices are false or deceptive. Def.'s Reply 11. The Court agrees with Plaintiff.

Under OAR 137-020-0010(6)(c), a reference price is permissible so long as it is "stated or readily ascertainable, and is a price at which an identified or identifiable competitor is or has in the recent regular course of its business offered to make good faith sales of the same or similar goods."[6] The regulation provides an example: "A person may rely upon the recent advertised price of a competitor for the same or similar goods, if he reasonably believes the competitor was attempting to make sales at that price. Alternatively, a person can 'shop' his competitor to determine the latter's recent offering price." *Id.*

Here, Plaintiff alleges that Defendant's comparable value reference prices "are not prices at which an identified or identifiable competitor is or has in the recent regular course of its business offered to make good faith sales of the same or similar goods." Compl. ¶ 79. Plaintiff supports this allegation with a factual investigation of the offering prices of similar goods sold by retail competitors in the area. *See id.* ¶¶ 37(a)–(f). That factual investigation yielded data showing that Defendant's comparable value reference prices all exceeded the prices at which similar goods were sold in nearby competitor retail outlets. *Id.* ¶ 36. The Court finds that Plaintiff's allegations and associated investigation plausibly demonstrate that Defendant's comparable value reference prices violate ORS 646.608(1)(j) and the rules adopted under ORS 646.608(4), namely OAR 137-020-0010(6). Plaintiff's allegations allow the Court to reasonably infer that Defendant's comparable value reference prices are false representations concerning

---

[6] "'Similar Goods' mean goods associated with a reference price which are similar in each significant aspect, including size, grade, quality, quantity, ingredients, utility and operating characteristics, to the offered goods." OAR 137-020-0010(5)(g).

16 – OPINION & ORDER

Defendant's price reductions and that Defendant's reference prices are not at a price at which an identified or identifiable competitor is or has offered for similar goods. *See* ORS 646.608(1)(j); OAR 137-020-0010(6); *see also Sanders v. Francis*, 277 Or. 593, 598, 561 P.2d 1003 (1977) ("[ORS 646.608(1)(j)] forbids sellers to misrepresent . . . price reductions for any purpose.").

Defendant argues that its in-store placards satisfy these provisions; however, as discussed above, *see* Discussion *supra*, Section III.A.i.a., the Court disagrees. Defendant's in-store placards are an "opaque reference." *Clark*, 2021 WL 1222521, at *3. Accordingly, the Court finds that Plaintiff plausibly alleges an unlawful trade practice under ORS 646.608(1)(ee)— specifically ORS 646.883(2)—ORS 646.608(1)(j), and ORS 646.608(1)(u).

c.     ORS 646.885

Under ORS 646.885(1), terms containing price comparisons in advertisements, "such as 'regular,' 'reduced,' 'sale,' 'usually,' 'originally,' 'clearance,' 'liquidation' and 'formerly' shall identify the origin of the price that the seller is comparing to the seller's current price as the seller's own former price, or in the case of introductory advertisements, the seller's future price." Further, under ORS 646.885(2), "[u]nless the seller states otherwise[,] . . . terms such as 'discount,' '_____ percent discount,' '$_____ discount,' '_____ percent off' and '$_____ off' shall be considered to identify the origin of the price that the seller is comparing to the seller's current price as the seller's former price, or in the case of introductory advertisements, the seller's future price."

Plaintiff argues that Defendant violates this provision because Defendant "routinely advertises both category-specific and storewide 'sales' and 'percent-off' promotions but never discloses the actual basis for the reference price . . . ." Pl.'s Resp. 22. Defendant argues that

17 – OPINION & ORDER

Plaintiff does not allege Defendant used any of the applicable price-comparison terms. Def.'s Reply 11–12. The Court agrees with Plaintiff.

Here, Plaintiff alleges that Defendant's marketing scheme artificially inflates the prices of its products "for the sole purpose of marking them at a discounted '*sale*' price relative to a 'comparable value' price." Compl. ¶ 22 (emphasis added). Plaintiff also alleges that Defendant "advertises [its] products at a *sale* price, or discount, as compared to a stated former price." *Id*. ¶ 77 (emphasis added). The Court finds these allegations sufficient to support the reasonable inference that Defendant used a requisite price comparison term under ORS 646.885. Plaintiff therefore was required to identify the "origin" of its comparable value reference price. *See* ORS 646.885(1). But as discussed, Defendant did not do so. *See* Discussion *supra*, Section III.A.i.a. Accordingly, the Court finds that Plaintiff plausibly alleges an unlawful trade practice under ORS 646.608(1)(ee), specifically ORS 646.885.

ii.    ORS 646.608(1)(s)

Under ORS 646.608(1)(s), a person engages in an unlawful trade practice if they make "false or misleading representations of fact concerning the offering price of, or the person's cost for real estate, goods or services." This paragraph requires "transparency around costs passed on to the consumer." *Mendoza v. Lithia Motors, Inc.*, No. 6:16-CV-01264-AA, 2018 WL 1513650, at *6 (D. Or. Mar. 27, 2018).

Plaintiff alleges an unlawful trade practice under ORS 646.608(1)(s) because Defendant's comparable value reference prices "do not represent the prevailing prices for goods of 'comparable value[,]'" i.e., Defendant's "prices and the words 'comparable value' are false or misleading representations of fact concerning the *offering price* of the products." Compl. ¶ 76 (emphasis added). Defendant argues these allegations are insufficient because they concern "the

18 – OPINION & ORDER

existence of comparable value pricing itself, not . . . any misstatement of the prices [Plaintiff] was offered and paid." Def.'s Reply 13. The Court agrees with Defendant.

Whether Defendant made false or misleading representations concerning the *offering price* of its products is separate from whether Defendant made false or misleading representations concerning its *comparable value reference prices*. Plaintiff nonetheless alleges that Defendant uses its allegedly false comparable value reference prices to inflate its offering prices. *See* Compl. ¶¶ 22, 43, 48. The Court, however, finds that Plaintiff does not plausibly allege Defendant inflates its offering prices. Indeed, for each of the clothing items purchased by Plaintiff, there is a like item sold by a retail competitor at a similar, and often greater, price. *See id.* ¶ 37(a) ("short-sleeve linen-blend shirt" purchased for $39.20 with like item sold at Banana Republic Factory between $30–$50); *id.* ¶ 37(b) ("performance jersey hoodie" purchased for $62.65 with like item sold at Old Navy between $35–$60); *id.* ¶ 37(c) ("leather dress belt" purchased for $29.75 with like item sold at Banana Republic Factory between $39–$42); *id.* ¶ 37(d) ("flex chino shorts" purchased for $34.75 with like item sold at Banana Republic Factory between $18–$55); *id.* ¶ 37(e) ("long-sleeve plaid casual shirt" purchased for $44.75 with like item sold at Banana Republic Factory between $21–$60); *id.* ¶ 37(f) ("short-sleeve gauze shirt" purchased for $34.95 with like item sold at Banana Republic Factory between $16–$60). Without factual allegations that allow the Court to draw the reasonable inference that Defendant misrepresents its offering prices, Plaintiff cannot state a violation under this provision. Accordingly, the Court finds Plaintiff does not plausibly allege Defendant misrepresents the offering prices of its goods and therefore an unlawful trade practice under ORS 646.608(1)(s).

///

///

19 – OPINION & ORDER

iii.    ORS 646.608(1)(i) and (1)(e)

Under ORS 646.608(1)(i), a person engages in an unlawful trade practice if they advertise "goods . . . with intent not to provide the . . . goods . . . as advertised . . . ." This provision "is aimed at eliminating 'bait and switch' transactions." *Solano v. Kroger Co.*, No. 3:18-CV-01488-AC, 2020 WL 7053537, at *12 (D. Or. July 20, 2020) (quoting *Andriesian v. Cosmetic Dermatology Inc.*, Case No. 3:14-cv-01600-ST, 2015 WL 1638729, at *9 (D. Or. Mar. 3, 2015)), *report and recommendation adopted in part, rejected in part*, No. 3:18-CV-01488-AC, 2020 WL 7028473 (D. Or. Nov. 30, 2020).

Similarly, under ORS 646.608(1)(e), a person engages in an unlawful trade practice if they represent that "goods . . . have sponsorship, approval, characteristics, ingredients, uses, benefits, quantities or qualities that the . . . goods . . . do not have . . . ." This provision "prohibits making misrepresentations . . . about certain attributes of goods, services, real estate, or persons." *State ex rel Rosenblum v. Living Essentials, LLC*, 371 Or. 23, 38, 529 P.3d 939 (2023) (emphasis omitted).

Plaintiff alleges an unlawful trade practice under both of these provisions because Defendant advertises discounts that "are not the true discounts that the customer receives[,]" Compl. ¶ 77 (violating ORS 646.608(1)(i)), and because Defendant "represents that the value of its products is greater than it actually is by advertising fake discounts for the products[,]" *id*. ¶ 78 (violating ORS 646.608(1)(e)). Defendant argues these allegations are insufficient because ORS 646.608(1)(i) and ORS 646.608(1)(e) are concerned with the characteristics or qualities of the product, not pricing representations. Def.'s Mot. 20–21; *see also* Def.'s Reply 14 ("[Plaintiff] is trying to convert a pricing challenge into a product-quality dispute in order to fit within subsections (1)(e) and (1)(i)."). The Court agrees with Defendant.

20 – OPINION & ORDER

This court in *McCarrell v. RugsUSA, LLC*, No. 3:25-CV-00454-AB, 2025 WL 2256278, at \*6–7 (D. Or. Aug. 7, 2025), dealt with a similar argument. There, the plaintiff alleged that the defendant violated ORS 646.608(1)(i) and (1)(e) because of the defendant's alleged fake-discount scheme. *Id.* at \*6. The court, however, held that these provisions did not apply to pricing representations. *See id.* ("[I]t appears that Oregon courts would decline to apply subsections (e) and (i) to pricing representations." (citing *Mendoza*, 2017 WL 125018, at \*5 and *Clark v. Eddie Bauer LLC*, 371 Or. 177, 186 n.9, 532 P.3d 880 (2023)). Consequently, the court dismissed the plaintiff's alleged UTPA violations under these provisions. *Id.* at \*7.

For the reasons expressed in *McCarrell*, this Court reaches the same conclusion here. Accordingly, the Court finds that Plaintiff does not plausibly allege an unlawful trade practice under ORS 646.608(1)(i) or (1)(e) because Plaintiff's allegations are based on pricing representations. *See Clark*, 371 Or. at 186 n.9 (assuming for purposes of the opinion that "a representation about a product's former price is not a representation about 'the character or quality of the product itself'"); *Mendoza*, 2017 WL 125018, at \*5 (holding that ORS 646.608(1)(e) did not apply to the defendant's failure to "disclose profits associated with third-party goods and services").

B.      Willfulness

"A willful violation occurs when the person committing the violation knew or should have known that the conduct of the person was a violation." ORS 646.605(10). Oregon courts interpret this to require at least negligence. *See State ex rel Rosenblum v. Living Essentials, LLC*, 335 Or. App. 30, 46–47, 558 P.3d 395, *opinion adh'd to as modified on recons. sub nom.*, *State ex rel. Rosenblum v. Living Essentials, LLC*, 336 Or. App. 1, 558 P.3d 1286 (2024); *Stewart v. Albertson's, Inc.*, 308 Or. App. 464, 492, 481 P.3d 978 (2021). At the pleading stage, a plaintiff's

21 – OPINION & ORDER

"factual allegations must somehow suggest the defendant acted willfully at the time of the alleged misconduct . . . ." *Miller v. WinCo Foods, LLC*, No. 3:19-CV-02094-AC, 2020 WL 6693149, at \*7 (D. Or. Sept. 3, 2020), *report and recommendation adopted*, No. 3:19-cv-020904-AC, 2020 WL 6685697 (D. Or. Nov. 12, 2020).

Defendant argues that Plaintiff does not plausibly allege willfulness because his allegations are conclusory. Def.'s Mot. 14–15; Def.'s Reply 15–16. Plaintiff responds that he plausibly alleges willfulness. Pl.'s Resp. 25–27. The Court agrees with Plaintiff.

Here, Plaintiff alleges that Defendant offers "materially deceptive and intentionally misleading" comparable value reference prices that "are not tied to the actual prevailing market prices of JCF products or products of comparable quality." Compl. ¶ 3. Plaintiff alleges Defendant does so "to trick its customers into believing that JCF products are worth, and have a value equal to, the inflated 'comparable value' price, and that the lower advertised sale price represents a special bargain." *Id.* ¶ 4. Plaintiff alleges Defendant employs this scheme "to drive increased sales." *Id.* The Court finds these allegations sufficient to support the reasonable inference that Defendant, at a minimum, should have known its conduct violated the UTPA. Indeed, it has been held that a defendant's "opaque reference" to a comparable value reference price is sufficient to maintain a UTPA claim. *Clark*, 2021 WL 1222521, at \*3; *see also Clark*, 770 F. Supp. 3d at 1278 ("[W]ithout identifying the comparable item, a consumer has no way of knowing if the price comparison is legitimate or a falsely inflated reference price." (internal quotation marks omitted)). Accordingly, the Court finds Plaintiff plausibly alleges willfulness.

C.   Ascertainable Loss & Causation

An ascertainable loss is any loss "capable of being observed or determined, however small." *Clark*, 371 Or. at 188. An unlawful trade practice must cause an ascertainable loss.

*Id.* at 191. In *Clark*, the Oregon Supreme Court held that a "purchase price theory is a viable means of establishing ascertainable loss . . . ." *Id.* at 194. Under a purchase price theory, a plaintiff must plausibly allege that they were "induced by another person's unlawful activities to pay money for something that [they] would not otherwise have bought." *Id.*; *see also id.* at 198–99 ("[W]hen a person acts in response to the deception by spending money that the person would not otherwise have spent, the person has been injured to the extent of the purchase price as a result of that deception.").

Here, Defendant argues that Plaintiff does not plausibly allege an ascertainable loss under a purchase price theory because he does not plead deception, i.e., that Defendant misrepresented its comparable value reference prices or the offer prices of its products. Def.'s Mot. 21–22*; see also* Def.'s Reply 16 ("Without facts showing falsity . . . , a price-premium theory cannot stand."). But Defendant's argument repackages its unlawful trade practices arguments. *See* Pl.'s Resp. 28 (arguing that Defendant's argument "merely repackages [its] position that its conduct was not an unlawful trade practice"). To establish an ascertainable loss, Plaintiff need only plead that he purchased his clothing items in reliance on Defendant's comparable value reference prices, and that he would not have purchased the clothing items had he known such prices were misrepresentations—regardless of whether the prices were in fact misrepresentations. *See Clark*, 371 Or. at 199. Here, Plaintiff does. Plaintiff alleges that he "relied on Defendant's [comparable value reference prices] in deciding to purchase the" clothing items and that he "would not have purchased the [clothing items], or would not have paid as much . . . , had he known Defendant's representations were not true." Compl. ¶ 42; *see also id.* ¶ 87 ("Plaintiff . . . would not have purchased the products at the prices [he] paid if [he] had known the advertised reference prices

23 – OPINION & ORDER

and discounts were false."). Accordingly, the Court finds that Plaintiff plausibly alleges an ascertainable loss and causation.[7]

## IV.    Fraud

"Oregon law recognizes four theories of fraud: (1) affirmative misrepresentation; (2) omission of a material fact when there is an independent duty to disclose; (3) omission of a material fact needed to make a 'half-truth' not misleading; and (4) actual or active concealment." *Martell v. Gen. Motors LLC*, 492 F. Supp. 3d 1131, 1142 (D. Or. 2020). Here, Plaintiff alleges fraud under two theories: affirmative misrepresentation and concealment. Compl. ¶¶ 97–106. Defendant moves to dismiss both theories. *See* Def.'s Mot. 22–24.

### A.    Affirmative Misrepresentation

To state an affirmative misrepresentation theory of fraud, a plaintiff must establish:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; (9) and his consequent and proximate injury.

*Conzelmann v. Nw. Poultry & Dairy Prods. Co.*, 190 Or. 332, 350, 225 P.2d 757 (1950); *ZAPS Techs. LLC v. Klinkhammer*, No. 6:20-CV-00760-IM, 2024 WL 4818623, at *5 (D. Or. Nov. 18, 2024).

Defendant argues Plaintiff cannot establish falsity, Defendant's knowledge of falsity, deceptive intent, or reliance. Def.'s Mot. 23; Def.'s Reply 18. Plaintiff responds that his allegations are sufficient. Pl.'s Resp. 29–30. The Court agrees with Plaintiff.

---

[7] Finding Plaintiff plausibly alleges an ascertainable loss under a purchase price theory, the Court need not address Plaintiff's additional loss theories, though the Court finds that such theories are largely reproductions of his purchase price theory. *See* Pl.'s Resp. 28 n.10.

24 – OPINION & ORDER

Here, Plaintiff's allegations allow the Court to reasonably infer that Defendant's comparative value reference prices were false, *see* Compl. ¶¶ 37(a)–(f); Defendant knew its reference prices were false, or Defendant was at least ignorant of its truth, *see id.* ¶ 26; Defendant's false reference prices were for the purpose of creating an illusion of savings and increasing sales, *see id.* ¶ 4; and Plaintiff relied on the truth of Defendant's representations in deciding to purchase his clothing items, *see id.* ¶ 103. Accordingly, the Court declines to dismiss Plaintiff's affirmative misrepresentation fraud theory.

### B.      Concealment

To state a concealment theory of fraud, a plaintiff must establish more than an affirmative misrepresentation and more than a failure to disclose material information; there must be evidence of a covering up of the truth. *See In re Premera Blue Cross Customer Data Sec. Breach Litig.*, 198 F. Supp. 3d 1183, 1193–94 (D. Or. 2016); *Yeti Enters. Inc. v. Tang*, No. 1:13-CV-01203-CL, 2017 WL 3478484, at *6 (D. Or. Aug. 14, 2017).

Defendant argues Plaintiff cannot establish fraud under a concealment theory because Plaintiff does not identify what information Defendant is alleged to be concealing. Def.'s Mot. 24. Plaintiff responds that there is overlap between a concealment theory of fraud and half-truth theory of fraud but, regardless, Plaintiff plausibly alleges fraud under either theory. Pl.'s Resp. 30 n.13. The Court finds that Plaintiff plausibly alleges fraud under a concealment theory.

Here, Plaintiff alleges that Defendant conceals the true value of its products and discounts through its "deceptive and intentionally misleading" false comparative value reference prices. Compl. ¶¶ 3, 38. The Court finds this is sufficient to plausibly state a concealment theory of fraud because it supports the reasonable inference that Defendant has intentionally conveyed false information about the value of comparable items with the purpose of covering up the true

25 – OPINION & ORDER

value of its discounts. *See In re Premera Blue Cross Customer Data Sec. Breach Litig.*, 198 F. Supp. 3d at 1193–94 ("Were a plaintiff to allege that a defendant contacted the plaintiff and intentionally misled or gave materially incorrect information to the plaintiff in order to send that party down the wrong path, this would suffice as an allegation of active concealment."). Accordingly, the Court declines to dismiss Plaintiff's concealment fraud theory.

## V.    Unjust Enrichment

In evaluating the merits of an unjust enrichment claim under Oregon law, courts "examine the established legal categories of unjust enrichment as reflected in Oregon case law and other authorities to determine whether any particular enrichment is unjust." *Larisa's Home Care, LLC v. Nichols-Shields*, 362 Or. 115, 132, 404 P.3d 912 (2017). In other words, Oregon courts evaluate unjust enrichment claims "by matching the circumstances presented in the case to those patterns already recognized in the case law, without explaining an overarching doctrine." *Id.* at 127. This analysis therefore requires courts to engage in "a case-by-case approach because this area of the law remains 'a work in progress.'" *McAllister Constr. Co. v. Liu*, 343 Or. App. 53, 59, 578 P.3d 190 (2025) (quoting *Larisa's Home Care*, 362 Or. at 125). That said, "[a] conclusion that one party has obtained benefits from another by fraud is . . . one of the most recognizable sources of unjust enrichment." *Larisa's Home Care*, 362 Or. at 133 (quoting Restatement (Third) of Restitution and Unjust Enrichment § 13 cmt. a). Thus, transfers that are "induced by fraud [are] subject to rescission and restitution." *Id.* (quoting Restatement (Third) of Restitution and Unjust Enrichment § 13(1)).

Here, Defendant moves to dismiss Plaintiff's unjust enrichment claim because Plaintiff has not alleged that legal remedies are inadequate or that Plaintiff's purchase enriched

26 – OPINION & ORDER

Defendant. Def.'s Mot. 25–26. Plaintiff responds that he may plead unjust enrichment in the alternative at this stage. Pl.'s Resp. 31–32. The Court agrees with Plaintiff.

As discussed, Plaintiff adequately alleges fraud under an affirmative misrepresentation and concealment theory. *See* Discussion *supra*, Section IV. Therefore, the Court finds that Plaintiff may also maintain a claim for unjust enrichment. *See, e.g.*, *McCarrell*, 2025 WL 2256278, at *10. Accordingly, the Court declines to dismiss Plaintiff's unjust enrichment claim.

## CONCLUSION

The Court GRANTS in part and DENIES in part Defendant's Motion to Dismiss for Failure to State a Claim [11]. Plaintiff may file an amended complaint attempting to cure the deficiencies identified herein within fourteen (14) days of this Opinion & Order. Defendant shall file their answer or otherwise responsive pleading fourteen (14) days thereafter.

IT IS SO ORDERED.

DATED this __1st__ day of April, 2026.

*Amy M. Baggio*
AMY M. BAGGIO
United States District Judge

27 – OPINION & ORDER