Ryan O'Hollaren (OSB 231160)
ohollarenr@ballardspahr.com
BALLARD SPAHR LLP
601 S.W. Second Avenue, Suite 2100
Portland, OR 97204
Telephone: 503.778.2100
Facsimile: 503.778.2200

Stephanie A. Sheridan (SBN 135910)
(*pro hac vice application forthcoming*)
sheridans@ballardspahr.com
Meegan B. Brooks (SBN 240418)
(*pro hac vice application forthcoming*)
brooksm@ballardspahr.com
Christine Wang (SBN 343163)
(*pro hac vice application forthcoming*)
wangch@ballardspahr.com
BALLARD SPAHR LLP
One Front St, Floor 26,
San Francisco, CA 94111
Telephone: 415.318.2770
Facsimile: 424.731.8301

*Attorneys for Defendant J. Crew Group, LLC*

M. Ryan Casey (OSB 152824)
ryan@rcaseylaw.com
THE CASEY LAW FIRM, LLC
PO Box 1055
Silverthorne, CO 80498
Tel: 970-372-6509

Evan E. North (*pro hac vice*)
evan@northlawpllc.com
NORTH LAW PLLC
1900 Market Street, Suite 800
Philadelphia, PA 19103
Tel: 202-921-1651

Edwin John Kilpela, Jr. (*pro hac vice*)
ek@waykayslay.com
Gillian Leigh Wade (*pro hac vice*)
gwade@waykayslay.com
WADE KILPELA SLADE LLP
6425 Living Place, Suite 200
Pittsburgh, PA 15206
Tel: 412-314-0515

*Attorneys for Plaintiff Sean Leyden*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF OREGON**
**PORTLAND DIVISION**

SEAN LEYDEN, individually and on behalf of all others similarly situated,

*Plaintiff*,

v.

J. CREW GROUP, LLC, a Delaware limited liability company,

*Defendant*.

Civil Action No. 3:25-cv-01448-AB

**STIPULATED ORDER GOVERNING ELECTRONIC DISCOVERY**

The parties hereby stipulate to the following provisions regarding the discovery of electronically stored information ("ESI") in this matter:

**A. General Principles**

1. This Order supplements all other discovery rules and orders. It streamlines Electronically Stored Information ("ESI") production to promote a "just, speedy, and inexpensive determination" of this action, as required by Federal Rule of Civil Procedure 1.

2. An attorney's zealous representation of a client is not compromised by conducting discovery in a cooperative manner. The failure of counsel or the parties to litigation to cooperate in facilitating and reasonably limiting discovery requests and responses raises litigation costs and contributes to the risk of sanctions.

3. The proportionality standard set forth in Fed. R. Civ. P. 26(b)(1) must be applied in each case when formulating a discovery plan. To further the application of the proportionality standard in discovery, requests for production of ESI and related responses should be reasonably targeted, clear, and as specific as possible. This agreement is intended to assist the parties in identifying relevant, responsive information that has been stored electronically and is proportional to the needs of the case. The agreement does not supplant the parties' obligations to comply with Fed. R. Civ. P. 34.

**B. ESI Disclosures**

Within 30 days of entry of this Order, or at a later time if agreed to by the parties, each party shall disclose:

1. Custodians. The custodians most likely to have discoverable ESI in their possession, custody, or control. The custodians shall be identified by name, title, and the type of the information under the custodian's control.

2. Non-custodial Data Sources. A list of non-custodial data sources (*e.g.*, shared drives, servers, databases), if any, likely to contain discoverable ESI.

3. Third-Party Data Sources. A list of third-party data sources, if any, likely to contain discoverable ESI (*e.g.*, third-party email providers, mobile device providers, cloud storage) and, for each such source, the extent to which a party is (or is not) able to preserve information stored in the third-party data source.

4. Inaccessible Data. A description of data sources, if any, likely to contain discoverable ESI (by type, electronic system, or other criteria sufficient to specifically identify the data source) that a party asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(B).

**C. ESI Discovery Procedures**

1. On-site inspection of electronic media. Such an inspection shall not be required absent a demonstration by the requesting party of specific need and good cause or by agreement of the parties.

2. Search methodology. The parties shall timely confer to attempt to reach agreement on appropriate search terms and queries, file type and date restrictions, data sources (including custodians), and other appropriate computer- or technology-aided methodologies, if necessary.

a. Upon a reasonable request, and subject to appropriate confidentiality and security protections, a party shall disclose information relating to the data sources (including custodians, the types of databases, and database dictionaries), search terms and queries, any file type and date restrictions, the ESI document retention policy, the backup and systems recovery routines and any other methodology that it used or proposes to use to locate ESI likely to contain responsive and discoverable information.

3. Format.

a. Except as provided in C.3.c, ESI shall be produced electronically as single page, uniquely and sequentially numbered TIFF image files not less than 300 dpi resolution. The

image files shall be accompanied by a text file containing the extracted text or searchable text using Optical Character Recognition when text is not extractable. The text files shall be named to match the endorsed number assigned to the image of the first page of the document. An image identification file shall be provided containing a row of information for every image included in the production. The format of the file shall be industry standard Relativity compatible (.DAT), IPRO format (LFP), Concordance Image format (OPT) or other delimited file format using common ASCII (American Standard Code for Information Interchange) characters for field identification that includes one row of information for each image with fields for image Bates number, relative path to the image, image filename, page number, and document start identifier to designate the first page of a document. The delimited data load file shall be produced with one row for each document produced and shall include the document information and metadata identified in the table below to the extent it is available. The format of the file shall be industry standard Concordance DAT file format or a delimited text file that uses ASCII character delimiters as follows: Field Delimiter = ""ASCII (020), Text Quote = "þ" ASCII (254), Multi-Entry - ";" ASCII (059).

b. Documents produced in color shall be produced as single-page JPG files at not less than 300 dpi, or as color TIFF, with the corresponding image load file entries. Documents produced with redactions shall be OCR'd after redaction and produced with a corresponding searchable text file.

c. Unless otherwise agreed to by the parties, files that are not easily converted to image format, such as spreadsheet, database, and drawing files, will be produced in native format, except that responsive data maintained in structured or aggregated data sources shall be produced as provided in C.4.

d. Each document image file shall be named with a unique number (Bates Number). File names should not be more than twenty characters long or contain spaces. When a text-searchable image file is produced, the producing party must preserve the integrity of the underlying ESI, *i.e.*, the original formatting, the metadata (as noted below) and, where applicable, the revision history.

e. If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document. The full text of each electronic document shall be extracted ("Extracted Text") and produced in a text file. The Extracted Text shall be provided in searchable ASCII text format (or Unicode text format if the text is in a foreign language) and shall be named with a unique Bates Number (*e.g.*, the unique Bates Number of the first page of the corresponding production version of the document followed by its file extension).

4. <u>Structured Data Extraction.</u> Where responsive ESI is maintained in an enterprise database, data warehouse, e-commerce, point-of-sale, customer relationship management, marketing, analytics, or other proprietary, aggregated, or disaggregated storage system ("Structured Data Source"), the producing party may satisfy its production obligations by querying the Structured Data Source and extracting or exporting the responsive fields and records, rather than producing the Structured Data Source itself, its native database files, or nonresponsive data. The producing party shall not be required to create new data, compile information that does not exist in the ordinary course, or provide the requesting party with direct access to any Structured Data Source. For purposes of this Paragraph, querying, filtering, sorting, or generating reports from data that exists in a Structured Data Source, including joining or combining data across tables or Structured Data Sources, does not constitute creating new data or compiling

information that does not exist in the ordinary course. Within fourteen (14) days of any production made in whole or in part under this Paragraph, the producing party shall identify in writing each document request to which the extracted data responds and the Bates numbers or production file names of the documents and data produced under this Paragraph. Upon reasonable request, the parties shall meet and confer regarding the data fields, date ranges, and query parameters to be used for any extraction.

5. De-duplication. The parties may de-duplicate their ESI production across custodial and non-custodial data sources, and the duplicate custodian information removed during the de-duplication process tracked in a duplicate/other custodian field in the database load file.

6. Email Threading. The parties may use analytics technology to identify email threads and need only produce the unique most inclusive copy and related family members and may exclude lesser inclusive copies. Upon reasonable request identifying specific documents, the producing party will produce a less inclusive copy.

7. Metadata fields. To the extent they are reasonably available, the metadata values that are to be extracted and produced in the load files are identified below. The below metadata values are intended to reflect metadata categories which typically automatically populate in most documents. To the extent any metadata value requires manual input, such a value shall not be required, except that the Custodian, AllCustodians, Confidentiality, and Redacted fields shall be populated in every production, and the RedactionBasis field shall be populated for documents redacted for privilege. Nothing in this Paragraph excuses the production of metadata that the Producing Party was obligated to preserve.

| *Field* | *Data Type* | *Paper* | *Native Files & Email Attachments* | *Email* |
|---|---|---|---|---|
| ProdBeg | Integer - Text | Starting Bates # | Starting Bates # | Starting Bates # |

| | | | | |
|---|---|---|---|---|
| ProdEnd | Integer - Text | Ending Bates # | Ending Bates # | Ending Bates # |
| ProdBegAttach | Integer - Text | Starting bates # of document family | Starting bates # of document family | Starting bates # of document family |
| ProdEndAttach | Integer - Text | Ending bates # of document family | Ending bates # of document family | Ending bates # of document family |
| Custodian | Text | Name of person the document was collected from | Name of person the document was collected from | Name of person the document was collected from |
| AllCustodians | Text; separate entries with ";" | | All custodians and sources in whose files the document was located, including those suppressed in de-duplication | All custodians and sources in whose files the message was located, including those suppressed in de-duplication |
| Source | Text | Storage location or non-custodial source | Storage location or non-custodial source where no individual custodian applies | Storage location or non-custodial source where no individual custodian applies |
| Folder | Text | | File path/folder structure for the original native file as it existed at the time of collection | File path/folder structure for the original native file as it existed at the time of collection. Should include full path and folder locations of email container files such as PST and NSF and the internal path of the email within those files |
| From | Text - paragraph | | | Sender of message |
| To | Text - paragraph Separate entries with ";" | | | Recipients of message |
| CC | Text – paragraph | | | Copied recipients |

| | | | | |
|---|---|---|---|---|
| | Separate entries with “;” | | | |
| BCC | Text – paragraph Separate entries with “;” | | | Blind copied recipients |
| Subject | Text - paragraph | | | Subject of message |
| Date_Sent | Date (mm/dd/yyyy) | | | Date message sent |
| Time_Sent | Time (hh:mm:ss) | | | Time message sent |
| Date_Rcvd | Date (mm/dd/yyyy) | | | Date message received |
| Time_Rcvd | Time (hh:mm:ss) | | | Time message received |
| FileName | Text - paragraph | | Name of original file including extension | Name of original file including extension |
| FileExtension | Text | | Extension of original file | Extension of original file |
| Date_Created | Date/Time (mm/dd/yyyy) | | Date file was created | |
| Date_LastMod | Date/Time (mm/dd/yyyy) | | Date file was last modified | |
| Title | Text - paragraph | | Title from document metadata | |
| Author | Text - paragraph | | Document author from metadata | |
| Company | Text - paragraph | | Document company or organization from metadata | |
| Confidentiality | Text | Any confidentiality designation asserted on the document | Any confidentiality designation asserted on the document | Any confidentiality designation asserted on the document |
| MD5 Hash | Text | | MD5 or SHA-1 Hash Value of document | MD5 or SHA-1 Hash Value of document |
| NativeLink | Text - paragraph | | Path including filename to the associated native file if produced (Relative Path) | Path including filename to the associated native |

| | | | | |
|---|---|---|---|---|
| | | | | file if produced (Relative Path) |
| TextLink | Text - paragraph | Path including filename to the associated searchable text file (Relative Path) | Path including filename to the associated searchable text file (Relative Path) | Path including filename to the associated searchable text file (Relative Path) |
| Redacted | Text | "Yes" where redacted; Null where not redacted | "Yes" where redacted; Null where not redacted | "Yes" where redacted; Null where not redacted |
| DocType | Text | Document type | Document type | Document type |
| FileSize | Integer | | Size of original file in bytes | Size of message in bytes |
| PgCount | Integer | Number of pages | Number of pages | Number of pages |
| Date_LastPrinted | Date (mm/dd/yyyy) | | Date file was last printed | |
| EmailThreadID | Text | | Thread identifier of the parent message | Thread identifier assigned by the processing tool |
| MessageID | Text | | | Internet message identifier; In-Reply-To and References values where available |
| RedactionBasis | Text | Basis for each redaction | Basis for each redaction | Basis for each redaction |

By agreeing to produce specific categories of metadata that are reasonably available, no party is representing that any particular category of metadata exists or is reasonably available.

For all documents (for example, email) that contain an attachment, the fields listed above should be produced as part of the metadata load file to provide the parent/child or parent/sibling relationship.

8. Hard-Copy Documents. If the parties elect to produce hard-copy documents in an electronic format, the production of hard-copy documents will include a cross-reference file that indicates document breaks and sets forth the custodian or custodian/location associated with each

produced document. Hard-copy documents will be scanned using Optical Character Recognition technology and searchable ASCII text files will be produced (or Unicode text format if the text is in a foreign language), unless the producing party can show that the cost would outweigh the usefulness of scanning (for example, when the condition of the paper is not conducive to scanning and will not result in accurate or reasonably useable/searchable ESI). Each file will be named with a unique Bates Number (*e.g.*, the unique Bates Number of the first page of the corresponding production version of the document followed by its file extension).

**D. Preservation of ESI**

The parties acknowledge that they have a common law obligation, as expressed in Fed. R. Civ. P. 37(e), to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody, or control. With respect to preservation of ESI, the parties agree as follows:

1. Absent a showing of good cause by the requesting party, the parties shall not be required to modify the procedures used by them in the ordinary course of business to back-up and archive data; provided, however, that the parties shall take reasonable and proportional steps to preserve discoverable ESI in their possession, custody, or control.

2. The parties will supplement their disclosures in accordance with Fed. R. Civ. P. 26(e) with discoverable ESI responsive to a particular discovery request or mandatory disclosure where that data is created after a disclosure or response is made (unless excluded under Section D.3).

3. Absent a showing of good cause by the requesting party, the following categories of ESI need not be preserved:

a. Deleted, slack, fragmented, or other data only accessible by forensics.

b. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

c. On-line access data such as temporary internet files, history, cache, cookies, and the like.

d. Data in metadata fields that are frequently updated automatically, such as last-opened dates (see also Section C.6).

e. Back-up data that are duplicative of data that are more accessible elsewhere.

f. Server, system or network logs.

g. Data remaining from systems no longer in use that is unintelligible on the systems in use, provided that such data and systems are identified to the opposing party.

h. Electronic data (*e.g.*, email, calendars, contact data, text messages, and notes) sent to or from mobile devices (*e.g.*, iPhone, iPad, Android devices), provided that a copy of such electronic data, to the extent discoverable, is saved elsewhere in the ordinary course (such as on a server, laptop, desktop computer, or "cloud" storage) and has been preserved.

**E. Privilege**

1. A producing party shall create a privilege log of all documents fully withheld from production or redacted on the basis of a privilege or protection, unless otherwise agreed or excepted by this Agreement and Order.

2. For each document withheld or redacted, the privilege log shall contain the following information: (i) a sequential number associated with each privilege log record, (ii) the

date of the document; (iii) the type of document (e.g., letter, e-mail, memorandum); (iv) the identity of all persons who authored, signed or otherwise prepared the document; (v) the identity of all persons designated as addressees or copyees; (vi) a description of the contents of the document that, without revealing information itself privileged or protected, is sufficient to enable the receiving party to understand the subject matter of the document and assess the basis of the claim of privilege or immunity; (vii) the type or nature of the privilege asserted (e.g., attorney-client privilege, work product doctrine, etc,); and (viii) the Bates Numbers corresponding to the first and last page of any withheld or redacted document, if the document has been assigned any such Bates Numbers

3. Privilege logs will be produced to all other parties no later than 21 days after delivering a production, and in any event no later than 30 days before the close of fact discovery, unless otherwise agreed to by the parties.

4. With respect to privileged or work-product information generated after the earlier of the filing of the complaint or a party's first written notice of the claims asserted in this action (by the opposing party), parties are not required to include any such information in privilege logs.

5. Pursuant to Fed. R. Evid. 502(d), the production of any documents, ESI, or information, whether inadvertent or otherwise, in this proceeding shall not, for the purposes of this proceeding or any other federal or state proceeding, constitute a waiver by the producing party of any privilege applicable to those documents, including the attorney-client privilege, attorney work-product protection, or any other privilege or protection recognized by law. Nothing contained herein is intended to or shall serve to limit a party's right to conduct a review of documents, ESI, or information for relevance, responsiveness, and/or segregation of privileged

and/or protected information before production. A producing party may invoke its rights pursuant to Fed. R. Evid. 502(d) over any document produced in this proceeding subject to the following:

a. If a Receiving Party introduces a document at a deposition, as an attachment to a motion or pleading, or otherwise informs the Producing Party that the Receiving Party intends to rely upon the document, the Producing Party must invoke its rights under this Order within fourteen (14) days of the document being introduced or of such notice.

b. Upon written notice of the production of protected documents by the Producing Party, the Receiving Party must promptly return, sequester, or destroy the specified document and any copies and may not further use or disclose the information until the claim has been resolved.

c. If the Receiving Party has disclosed the specified documents before being notified, it must take reasonable steps to retrieve them.

d. The Producing Party shall provide an updated privilege log for such documents.

e. The Receiving Party shall have fourteen (14) days from receipt of notification to determine whether to contest such claim.

f. In the event that the Parties cannot reach agreement, the Receiving Party may move the Court for a determination of the claim within fourteen (14) days and may submit the disputed document to the Court under seal in connection with such motion.

DATED: November 4th, 2026

By: *<u>/s/ M. Ryan Casey</u>*
M. Ryan Casey (OSB 152824)
ryan@rcaseylaw.com
**THE CASEY LAW FIRM, LLC**

By: <u>/s/ *Ryan O'Hollaren*</u>
Ryan O'Hollaren (OSB 231160)
ohollarenr@ballardspahr.com
**BALLARD SPAHR LLP**

PO Box 1055
Silverthorne, CO 80498
Tel: 970-372-6509

Evan E. North (*pro hac vice*)
evan@northlawpllc.com
**NORTH LAW PLLC**
1900 Market Street, Suite 800
Philadelphia, PA 19103
Tel: 202-921-1651

Edwin John Kilpela, Jr. (*pro hac vice*)
ek@waykayslay.com
Gillian Leigh Wade (*pro hac vice*)
gwade@waykayslay.com
**WADE KILPELA SLADE LLP**
6425 Living Place, Suite 200
Pittsburgh, PA 15206
Tel: 412-314-0515

*Attorneys for Plaintiff Sean Leyden*

601 S.W. Second Avenue, Suite 2100
Portland, OR 97204
Tel: 503.778.2100

Stephanie A. Sheridan (SBN 135910)
(*pro hac vice application forthcoming*)
sheridans@ballardspahr.com
Meegan B. Brooks (SBN 240418)
(*pro hac vice application forthcoming*)
brooksm@ballardspahr.com
Christine Wang (SBN 343163)
(*pro hac vice application forthcoming*)
wangch@ballardspahr.com
**BALLARD SPAHR LLP**
One Front St, Floor 26,
San Francisco, CA 94111
Tel: 415.318.2770

*Attorneys for Defendant J. Crew Group, LLC*

**ORDER**

Based on the foregoing, IT IS SO ORDERED.

DATED: ____________________

______________________________________________
The Honorable Amy M. Baggio
United States District Judge